UNITED STATES of America, Appellee,

v.

Gennaro J. ANGIULO,
Defendant, Appellant.

No. 84–1745.

United States Court of Appeals,
First Circuit.

Heard Jan. 10, 1985.

Decided Feb. 25, 1985.

James L. Sultan, Boston, Mass., with whom Joseph T. Travaline, Burlington, Mass., was on brief, for defendant, appellant.

Diane M. Kottmyer, Boston, Mass., with whom Ernest S. Dinisco, Jane E. Serene, Sp. Attys., William F. Weld, U.S. Atty. and Jeremiah T. O'Sullivan, Sp. Atty., Boston, Mass., were on brief, for appellee.

Before BREYER, ALDRICH and TORRUELLA, Circuit Judges.

BREYER, Circuit Judge.

The district court, applying the Bail Reform Act of 1984, found that the release of Gennaro Anguilo from pretrial detention would put at risk the "safety" of the community, and it ordered that he remain in custody. Anguilo appeals, on the ground that the new Bail Reform Act does not apply to one like him whom the government had charged *before* the new Act took effect. Since we do not agree with this claim, since Anguilo makes no significant constitutional challenge to the new statute on this appeal, and since we find that the district court's order has sufficient evidentiary support, we affirm the district court's decision.

I

The basic procedural facts are the following. On September 19, 1983, a grand jury charged appellant with several serious federal crimes. On September 20, the government brought appellant before a magistrate, who ordered him held without bail lest he flee the jurisdiction—a decision that the district court affirmed. In early January, 1984, this court upheld the lawfulness of appellant's pretrial confinement, finding the evidence of risk of flight sufficient to make this a "rare case of extreme and unusual circumstances that justifies pretrial detention without bail." *United States v. Anguilo,* No. 83–1965 (1st Cir. Jan. 5, 1984), quoting *United States v. Abrahams,* 575 F.2d 3, 8 (1st Cir.), *cert.*

*denied,* 439 U.S. 821, 99 S.Ct. 85, 58 L.Ed.2d 112 (1978).

During 1984 appellant first asked the magistrate and then twice asked the district court to reconsider his circumstances. *See* Bail Reform Act of 1966, 18 U.S.C. former §§ 3146(d) and 3147(a). On October 9, 1984, the district court wrote that it was "prepared to order" that appellant be released under conditions "tantamount to house arrest"; and, it asked the government to suggest appropriate safeguards. In response, the government noted that the new Bail Reform Act had just become law (on October 12, 1984); it asked the court to continue appellant's detention under the new Act's "dangerousness" provisions. On October 19, the court ordered appellant's continued detention. Subsequently, in a memorandum of October 23, the court wrote that its

> stated intention in its prior decision to release the defendant on bail is withdrawn, and the government's motion that the defendant be detained pending trial as required by the Bail Reform Act of 1984 is allowed.

Anguilo appeals from the district court's decision.

## II

■ The basic legal issue in this case is whether the standards of the new Bail Reform Act, 18 U.S.C. § 3141 *et seq.,* apply to one who, like appellant, was incarcerated (and seeking release) on October 12, 1984, when the new Act became law. The Act itself does not say. It speaks of an "effective date" of "October 12, 1984," but it is silent as to whether, or to what extent, it applies to those charged before that date. Its language neither precludes nor mandates such application. Similarly, the parties have not been able to point to anything in the legislative history of the Act that suggests Congress explicitly considered the question. We have found, however, two sources of authority that point towards a proper legal answer.

First, courts often turn to various "canons" of construction to interpret statutes that are silent or ambiguous. *See generally, e.g.,* C. Sands, *Statutes and Statutory Construction* (4th ed. 1984); R. Dickerson, *The Interpretation and Application of Statutes* (1975). One such canon, relevant here, interprets new statutes and other new law to reflect an intent to apply to cases in the process of being decided at the time the new law takes effect. This canon, or principle, is reflected in Chief Justice Marshall's well known statement that,

> if subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed....

*United States v. Schooner Peggy,* 5 U.S. (1 Cranch) 102, 109, 2 L.Ed. 49 (1801). This principle is embodied in the Supreme Court's holding that a new law applies to a case in progress unless applying it "would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. Richmond School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974); *New England Power Co. v. United States,* 693 F.2d 239, 244 (1st Cir.1982). The case before us is one that was pending on October 12. The district court had not reached a final decision about appellant's application for release. Since nothing in the new Bail Reform Act or its legislative history says that the Act does *not* apply, *Bradley* requires us to look to the "justice" or "injustice" of the new Act's application.

We do not believe it "unjust" to apply the new Act to those, like appellant, who were in custody on October 12, 1984, because those then in custody are unlikely to have relied to their detriment upon the continued application of prior law. In this respect there is an important difference between persons in custody on October 12 and those free on bail. The latter might claim that they have relied upon continued freedom in making plans for their trial defense, or in making other important plans; and the threat of incarceration might disrupt those plans. The former, however, could not have reasonably relied

upon the freedom promised them under prior law, for they were committed to custody under that law. At best theirs was a *hope* for freedom that changing circumstances might, or might not, have let them realize.

Without a showing of likely significant and justified reliance those in custody fall outside both *Bradley*'s exception and the scope of other canons that disfavor 'retroactive' application of new statutes. *See, e.g., United States v. Security Industrial Bank,* 459 U.S. 70, 79, 103 S.Ct. 407, 412, 74 L.Ed.2d 235 (1982); *Greene v. United States,* 376 U.S. 149, 160, 84 S.Ct. 615, 621, 11 L.Ed.2d 576 (1964); *United States v. Heth,* 7 U.S. (3 Cranch) 399, 413, 2 L.Ed. 479 (1806). These canons basically seek to protect the interests of those who have reasonably relied upon the legal status quo. *See* 2 C. Sands, *Statutes and Statutory Construction* §§ 41.04, 41.05 (4th ed. 1973). An inability to find such likely reliance by those incarcerated indicates that application of the new law is not unjust, and that Congress therefore likely intended the new law to apply, at least to pending proceedings involving incarcerated persons.

Applying a canon like *Bradley*'s to discern congressional intent is not simply to indulge in a legal fiction. The *Bradley* rule (reflecting the *Schooner Peggy* principle) is well established. Legislative draftsmen and their legal advisors often refer to well established interpretive principles when preparing statutory language. A court decision consistent with such a principle is more likely than its opposite to reflect what congressional staffs, advisors, witnesses, interest groups, and legislators themselves believe will occur despite a legislative history that is silent. (In fact, silence may reflect an absence of controversy, not congressional indifference to the result.) At the same time consistent judicial adherence to interpretive principles eases the task of drafting legislation by pointing to likely future interpretive results without requiring statutory language on every point. These practical institutional considerations as well as legal theory recommend adherence to *Bradley*'s interpretive rule here.

Second, a consideration of the new Act's basic purposes suggests that legislators, with those purposes in mind, would likely favor the Act's application to those in custody. *Cf. Mayburg v. Secretary of Health and Human Services,* 740 F.2d 100, 104–07 (1st Cir.1984). The Act has at least two objectives. On the one hand, it seeks to prevent the "arbitrary use of high money bail as a way to assure a defendant's incarceration." S.Rep. No. 225, 98th Cong., 1st Sess. 9–10 (1983) U.S.Code Cong. & Admin. News 1984 pp. 1, 11, 12 ("It has been suggested that pretrial detention under" the former Bail Act "is often the result of intentional imposition of excessively stringent release conditions, and in particular high money bonds"). *See* Hearings before the Subcommittee on the Constitution of the Senate Comm. on the Judiciary, 97th Cong., 1st Sess. 100, 181, 216–17 (1982). It therefore states explicitly what the prior statute said implicitly, that a "judicial officer may not impose a financial condition that results in the pretrial detention of any person." 18 U.S.C. § 3142(c). (*See* Appendix, *infra,* for text of relevant portions of the Act.) On the other hand, the new Act broadens the courts' authority to detain "dangerous" persons prior to trial. It requires magistrates and judges to focus on the question of danger directly, and allows them, after a hearing, to keep in custody not only defendants who pose a serious risk of flight, but also those who seriously threaten the "safety" of others or of "the community." 18 U.S.C. § 3142(e). Thus the statute seeks to assure release of the defendant who is 'safe but poor' while allowing detention of a dangerous defendant financially capable of posting a bond.

Given these purposes, it is difficult to see why Congress would not want the new law to apply to those incarcerated at the time it was enacted. To apply the new Act's specific language to the 'safe but poor' defendant furthers Congress's statutory objective, benefits the defendant, and deprives the government of nothing to which it was entitled under the old law, *cf.* former

18 U.S.C. § 3146(a), or the new. To apply it (in what must be an unusual situation) to a "dangerous" person previously held as a 'flight risk' also furthers Congress's statutory objectives by keeping those persons in custody. Although application of the new statute works to the disadvantage of any such defendant who otherwise would be released, nothing in the new Act or its history suggests congressional solicitude for this category of defendant. Indeed, the only possible offsetting consideration to repeated congressional declarations that such defendants should be kept in custody, *see* S.Rep., *supra*, at 10–12, would be some special consideration of 'fairness.' But, as we have already said, we can find nothing unfair about applying the new Act to one already in custody and to a judicial proceeding already in progress.

In sum, principles of statutory construction resting upon fairness and consideration of the statute's purposes both suggest that Congress intended the statute to apply in cases like the one before us.

We next consider four arguments to the contrary. First, Anguilo points to § 3142(f) of the new Act. That section says that the magistrate or judge will decide whether to detain or to release a defendant after a "detention hearing" which

> shall be held immediately upon the person's first appearance before the judicial officer unless that person or the attorney for the government seeks a continuance [for a maximum of five days and two days respectively].

Anguilo points out that this detention hearing could not have been held "immediately" in the case of a person first detained before the provision became law (October 12, 1984). He concludes from this fact that the new law was not meant to apply to such a person.

This conclusion, however, rests too much upon too little. The object of § 3142(f)'s quoted language is to guarantee a speedy bail determination, to prevent the magistrate or judge from ordering the defendant temporarily detained (*see* 18 U.S.C. § 3142(d)), and then holding the key "de-tention" hearing at some much later time. S.Rep., *supra*, at 21–22. The language does not say that if, for some special reason, one cannot hold the key hearing "immediately," the entire Act no longer applies. Nor does it forbid application of the Act's standards at other hearings, say those at which a magistrate reconsiders previously ordered incarceration.

We concede that the way in which § 3142(c) is to be applied seems slightly confusing because of an odd procedural omission in the new Act. Congress apparently has not enacted an explicit procedural counterpart to § 3146(d) of the former 1966 Act, which provided for magistrate or district court reconsideration of a detention order. As far as we can tell, § 3142(f) of the new Act governs the magistrate's (or judge's) *initial* decision whether to detain or to release a defendant on conditions. The last sentence of § 3142(c) then allows the magistrate or judge "at any time" to "amend" a *release* order. But, the Act nowhere says how one *detained* can seek a new determination in light of changed circumstances. (Section 3145, at first blush, may seem to provide for such review; but in fact it does not, for it governs only what are in essence appeals, from magistrate to district court and from district court to court of appeals). After reviewing the legislative history, we have concluded that this procedural omission was inadvertent, for Congress nowhere expresses any intent to deny a person in custody the right to ask for reconsideration. In the absence of an express statutory reconsideration provision, the magistrate and district court nonetheless possess inherent power to reconsider previous detention orders—an inherent power to modify (or revoke) previous bail orders that the 1966 Act's statutory provisions "merely embodied." C. Wright, *Federal Practice and Procedure: Criminal 2d* § 769. *See Stack v. Boyle,* 342 U.S. 1, 11, 72 S.Ct. 1, 6, 96 L.Ed. 1 (1951) (opinion of Jackson, J.); *Fernandez v. United States,* 81 S.Ct. 642, 644, 5 L.Ed.2d 683 (1961) (opinion of Circuit Justice Harlan) ("District courts have authority as an inci-

dent of their inherent powers ... to revoke bail"); *United States v. Black*, 543 F.2d 35, 37 (7th Cir.1976) ("[T]he same statute which explicitly empowers the district court to impose conditions upon release pending appeal, implicitly empowers the court to make such adjustments in those conditions as circumstances may necessitate."). We conclude that the proceeding under review is properly characterized from a procedural perspective as such a reconsideration by the district court of its prior detention order. Regardless, this procedural problem does not help appellant, for the question remains what standards Congress intended a magistrate or court to apply at a reconsideration hearing. And for the reasons previously stated, we believe that Congress wanted (or would have wanted) the new Act's standards applied to one then being held in custody.

Second, the parties point to three recent cases deciding similar issues. The government notes that in *United States v. Payden*, 598 F.Supp. 1388 (S.D.N.Y.1984), the district court upheld application of the new law to a defendant arraigned before October 12. Appellant notes that in two other cases the courts denied application of the new Act to persons arraigned before its enacting. In the first of these, however, the Eleventh Circuit refused *per curiam* to apply the new law to persons whose "release was ordered by the district court before the new law became effective." *United States v. Fernandez-Toledo*, 749 F.2d 703 (11th Cir.1985) (per curiam). The court ruled the new statute inapplicable because, in its view, defendants' "right to bail had already vested." It treated the appellants as if they were persons free on bail before October 12. In doing so, it treated them as outside the rationale of this opinion. *See* pp. 970–71, *supra.* And, we therefore do not consider it as conflicting.

In *United States v. Mitchell*, 600 F.Supp. 164 (D.Cal.1985), a California district court held the new Act inapplicable in circumstances much like this one. The California court, however, based its decision upon the reliance interests of those *released* on bail before October 12. The court did not distinguish between the class of released persons and the class of persons in custody. It seems to us, however, that the fact of custody (and the consequent small likelihood of significant reliance) makes an important and meaningful difference. Moreover, the "in custody/at liberty" distinction is simple and easy to administer. *Cf. United States v. Mitchell, supra,* at 168–69. Thus, we believe we can best effectuate likely congressional intent by applying the new Act's standards to those detained at the time of its enactment.

Third, appellant claims that the district court is applying new law "retroactively," and he invokes a series of cases that, he says, forbid "retroactivity." *See United States v. Security Industrial Bank*, 459 U.S. 70, 79, 103 S.Ct. 407, 412, 74 L.Ed.2d 235 (1982); *Greene v. United States*, 376 U.S. 149, 160, 84 S.Ct. 615, 621, 11 L.Ed.2d 576 (1964); *United States v. Heth*, 7 U.S. (3 Cranch) 399, 413, 2 L.Ed. 479 (1806); *Addison v. Bulk Food Carriers, Inc.*, 489 F.2d 1041, 1042–43 (1st Cir.1974). "Retroactivity," however, is a relative, not an absolute, notion. The law before us is not retroactive in the sense of punishing or rewarding conduct previously carried out, *see, e.g., Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 963, 67 L.Ed.2d 17 (1981); *Calder v. Bull*, 3 U.S. (3 Dall.) 385, 390, 1 L.Ed. 648 (1978). On the other hand, it is retroactive in the sense that it applies to one already charged when the law was enacted. In these circumstances, the word "retroactive" does not itself answer the applicability question. Rather, one must look beneath the word to the functional considerations that it embodies. And, doing so, for reasons stated at pp. 970–71, leads us to conclude that the new Act applies here.

Fourth, appellant argues that his case ought to be considered like that of a person released, not a person in custody, for, he says, the district court had ordered him released before October 12. As a practical matter, however, appellant had not been released. As a formal matter, the court had made no final decision to release him. Rather, the new Act became law and was

brought to the attention of the district court while it was in the midst of deciding what to do with appellant's motion for release. The court had not ordered appellant's release. On October 9, the court said it was "prepared" to do so; it later characterized its decision as "tentative"; and it spoke in its October 23 memorandum of its previous "intention." On January 9, 1985, the court characterized its decision as one made in response to an ongoing motion for modification. *United States v. Zannino*, Cr. No. 83–235–N, slip op. at 5 n. 1 (D.Mass. Jan. 9, 1985). Moreover, a release order by the district court would have been appealable under § 3145, and therefore not "final" in this additional sense. Thus, both formal and practical considerations require us to treat this case as one involving the application of the new Bail Act's standards to one presently in custody. And for the reasons stated, the Act's new standards apply.

### III

■ Appellant argues that, even if the new Act applies, the government has not proved by the "clear and convincing" evidence that the Act requires that he poses a danger to "the safety of any other person and the community." 18 U.S.C. § 3142(f). He first claims that the district court could not rely on the evidence obtained by electronic surveillance, the legality of which he challenges. We previously wrote, however, in *In re Globe Newspaper*, 729 F.2d 47, 54 (1st Cir.1984), a case in which both defendant and the government were parties, that the provisions of federal law "allow the disclosure of [information obtained through electronic surveillance] to the court conducting ... bail hearings," at least until a court has decided that the material was not obtained legally. Otherwise, the challenge of a defendant to lawfully obtained materials might prove sufficient to keep highly relevant information from the judicial officer or to delay the initial bail hearing, contrary to the "immediacy" requirement of § 3142(f).

■ Appellant also argues that the materials on which the district court relied (including those obtained from electronic surveillance) are stale or irrelevant or conclusory and, in any event, even when taken together are insufficient for the district court's conclusion. Those materials are under seal. We have examined them, and we conclude that they offer a legally sufficient basis for the district court to conclude that "no condition or combination of conditions [imposed on release] will reasonably assure ... the safety of any other person and the community." 18 U.S.C. § 3142(e).

Finally, appellant argues that the district court held that he was as dangerous inside jail as outside; hence there is no rational basis for holding him. Given the fact that common sense strongly suggests that detention must have some effect on 'danger,' we do not believe the district court meant with absolute literalness that the risks appellant poses to others in the community are *precisely* the same whether or not he is detained. In any event, we are unwilling to assume it meant this in the absence of a showing in the record that the court focused directly on the issue that appellant's counsel now raises.

Again we note that appellant does not now challenge the basic constitutionality of the new Act's "dangerousness" provisions. On the basis of our resolution of the issues he has presented to us on this appeal, we believe the district court's decision is legally correct, and that decision is

*Affirmed.*

### APPENDIX

### 18 U.S.C. §§ 3142, 3145

"**§ 3142. Release or detention of a defendant pending trial**

"(a) In General.—Upon the appearance before a judicial officer of a person charged with an offense, the judicial officer shall issue an order that, pending trial, the person be—

"(1) released on his personal recognizance or upon execution of an unsecured

appearance bond, pursuant to the provisions of subsection (b);

"(2) released on a condition or combination of conditions pursuant to the provisions of subsection (c);

"(3) temporarily detained to permit revocation of conditional release, deportation, or exclusion pursuant to the provisions of subsection (d); or

"(4) detained pursuant to the provisions of subsection (e).

"(b) Release on Personal Recognizance or Unsecured Appearance Bond.—The judicial officer shall order the pretrial release of the person on his personal recognizance, or upon execution of an unsecured appearance bond in an amount specified by the court, subject to the condition that the person not commit a Federal, State, or local crime during the period of his release, unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.

"(c) Release on Conditions.—If the judicial officer determines that the release described in subsection (b) will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, he shall order the pretrial release of the person—

"(1) subject to the condition that the person not commit a Federal, State, or local crime during the period of release, and

"(2) subject to the least restrictive further condition, or combination of conditions, that he determines will reasonably assure the appearance of the person as required and the safety of any other person and the community, which may include the condition that the person—

"(A) remain in the custody of a designated person, who agrees to supervise him and to report any violation of a release condition to the court, if the designated person is able reasonably to assure the judicial officer that the person will appear as required and will not pose a danger to the safety of any other person or the community;

"(B) maintain employment, or, if unemployed, actively seek employment;

"(C) maintain or commence an educational program;

"(D) abide by specified restrictions on his personal associations, place of abode, or travel;

"(E) avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense;

"(F) report on a regular basis to a designated law enforcement agency, pretrial services agency, or other agency;

"(G) comply with a specified curfew;

"(H) refrain from possessing a firearm, destructive device, or other dangerous weapon;

"(I) refrain from excessive use of alcohol, or any use of a narcotic drug or other controlled substance, as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802), without a prescription by a licensed medical practitioner;

"(J) undergo available medical or psychiatric treatment including treatment for drug or alcohol dependency, and remain in a specified institution if required for that purpose;

"(K) execute an agreement to forfeit upon failing to appear as required, such designated property, including money, as is reasonably necessary to assure the appearance of the person as required, and post with the court such indicia of ownership of the property or such percentage of the money as the judicial officer may specify;

"(L) execute a bail bond with solvent sureties in such amount as is reasonably necessary to assure the appearance of the person as required;

"(M) return to custody for specified hours following release for employment, schooling, or other limited purposes; and

"(N) satisfy any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community.

The judicial officer may not impose a financial condition that results in the pretrial detention of the person. The judicial officer may at any time amend his order to impose additional or different conditions of release.

"(d) Temporary Detention To Permit Revocation of Conditional Release, Deportation, or Exclusion.—If the judicial officer determines that—

"(1) the person—

"(A) is, and was at the time the offense was committed, on—

"(i) release pending trial for a felony under Federal, State, or local law;

"(ii) release pending imposition or execution of sentence, appeal of sentence or conviction, or completion of sentence, for any offense under Federal, State, or local law; or

"(iii) probation or parole for any offense under Federal, State, or local law; or

"(B) is not a citizen of the United States or lawfully admitted for permanent residence, as defined in section 101(a)(20) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(20)); and

"(2) the person may flee or pose a danger to any other person or the community;

he shall order the detention of the person, for a period of not more than ten days, excluding Saturdays, Sundays, and holidays, and direct the attorney for the Government to notify the appropriate court, probation or parole official, or State or local law enforcement official, or the appropriate official of the Immigration and Naturalization Service. If the official fails or declines to take the person into custody during that period, the person shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings. If temporary detention is sought under paragraph (1)(B), the person has the burden of proving to the court that he is a citizen of the United States or is lawfully admitted for permanent residence.

"(e) Detention.—If, after a hearing pursuant to the provisions of subsection (f), the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, he shall order the detention of the person prior to trial. In a case described in (f)(1), a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person and the community if the judge finds that—

"(1) the person has been convicted of a Federal offense that is described in subsection (f)(1), or of a State or local offense that would have been an offense described in section (f)(1) if a circumstance giving rise to Federal jurisdiction had existed;

"(2) the offense described in paragraph (1) was committed while the person was on release pending trial for a Federal, State, or local offense; and

"(3) a period of not more than five years has elapsed since the date of conviction, or the release of the person from imprisonment, for the offense described in paragraph (1), whichever is later.

Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq)., the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), section 1 of the Act of September 15, 1980 (21 U.S.C. 955a), or an offense under section 924(c) title 18 of the United States Code.

"(f) Detention Hearing.—The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) will reasonably assure the appearance of the person as required and the safety of any other person and the community in a case—

"(1) upon motion of the attorney for the Government, that involves—

"(A) a crime of violence;

"(B) an offense for which the maximum sentence is life imprisonment or death;

"(C) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or section 1 of the Act of September 15, 1980 (21 U.S.C. 955a); or

"(D) any felony committed after the person had been convicted of two or more prior offenses described in subparagraphs (A) through (C), or two or more State or local offenses that would have been offenses described in subparagraphs (A) through (C) if a circumstance giving rise to Federal jurisdiction had existed; or

"(2) Upon motion of the attorney for the Government or upon the judicial officer's own motion, that involves—

"(A) a serious risk that the person will flee;

"(B) a serious risk that the person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

The hearing shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance. Except for good cause, a continuance on motion of the person may not exceed five days, and continance on motion of the attorney for the Government may not exceed three days. During a continu-ance, the person shall be detained, and the judicial officer, on motion of the attorney for the Government or on his own motion, may order that, while in custody, a person who appears to be a narcotics addict receive a medical examination to determine whether he is an addict. At the hearing, the person has the right to be represented by counsel, and, if he is financially unable to obtain adequate representation, to have counsel appointed for him. The person shall be afforded an opportunity to testify, to present witnesses on his own behalf, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise. The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing. The facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence. The person may be detained pending completion of the hearing.

"(g) Factors To Be Considered.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

"(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

"(2) the weight of the evidence against the person;

"(3) the history and characteristics of the person, including—

"(A) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

"(B) whether, at the time of the current offense or arrest, he was on probation, or parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

"(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(2)(K) or (c)(2)(L), the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

"(h) Contents of Release Order.—In a release order issued pursuant to the provisions of subsection (b) or (c), the judicial officer shall—

"(1) include a written statement that sets forth all the conditions to which the release is subject, in a manner sufficiently clear and specific to serve as a guide for the person's conduct; and

"(2) advise the person of—

"(A) the penalties for violating a condition of release, including the penalties for committing an offense while on pretrial release;

"(B) the consequences of violating a condition of release, including the immediate issuance of a warrant for the person's arrest; and

"(C) the provisions of sections 1503 of this title (relating to intimidation of witnesses, jurors, and officers of the court), 1510 (relating to obstruction of criminal investigations), 1512 (tampering with a witness, victim, or an informant), and 1513 (retaliating against a witness, victim, or an informant).

"(i) Contents of Detention Order.—In a detention order issued pursuant to the provisions of subsection (e), the judicial officer shall—

"(1) include written findings of fact and a written statement of the reasons for the detention;

"(2) direct that the person be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

"(3) direct that the person be afforded reasonable opportunity for private consultation with his counsel; and

"(4) direct that, on order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the person is confined deliver the person to a United States marshal for the purpose of an appearance in connection with a court proceeding.

The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

"(j) Presumption of Innocence.—Nothing in this section shall be construed as modifying or limiting the presumption of innocence.

"§ 3145. Review and appeal of a release or detention order

"(a) Review of a Release Order.—If a person is ordered released by a magistrate, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court—

"(1) the attorney for the Government may file with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release, and

"(2) the person may file, with the court having original jurisdiction over the of-

fense, a motion for amendment of the conditions of release.

The motion shall be determined promptly.

"(b) Review of a Detention Order.—If a person is ordered detained by a magistrate, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

"(c) Appeal From a Release or Detention Order.—An appeal from a release or detention order, or from a decision denying revocation or amendment of such an order, is governed by the provisions of section 1291 of title 28 and section 3731 of this title. The appeal shall be determined promptly."

Levin H. Campbell, Chief Judge, filed opinion concurring in part and dissenting in part.