UNITED STATES

v.

Alexander Awad ISHRAITEH.

No. Crim. 98–10370–DPW.

United States District Court,
D. Massachusetts.

July 12, 1999.

Carmen Ortiz, Assistant United States Attorney, Office of the United States Attorney, Boston, MA, for plaintiff.

Paul V. Kelly, Foley, Hoag & Eliot, Boston, MA, for defendant.

## ORDER ON DEFENDANT'S MOTION TO AMEND DETENTION ORDER

ALEXANDER, United States Magistrate Judge.

Alexander Awad Ishraiteh ("Ishraiteh") was arrested on November 11, 1998, in California at the San Francisco International Airport pursuant to a criminal complaint issued by the District of Massachusetts. He was indicted on November 24, 1998, by a federal grand jury in the District of Massachusetts, and on November 30, 1998, Magistrate Judge Elizabeth Laporte issued an Order of Detention and Removal. Subsequently, on January 14, 1999, a superseding indictment was issued and Ishraiteh was charged with two counts of mail fraud in violation of 18 U.S.C. § 1341; four counts of wire fraud in violation of 18 U.S.C. § 1343; five counts of money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) & (ii); and five counts of money laundering in violation of 18 U.S.C. § 1957(a). The parties appeared before this Court on June 23, 1999, for a hearing on the Defendant's motion to amend the Detention Order. Assistant United States Attorney Carmen Ortiz appeared on behalf of the Government, and Attorney Paul Kelly appeared on behalf of the Defendant.

The Bail Reform Act provides that "[t]he judicial officer may at any time amend the order to impose additional or different conditions of release." 18 U.S.C. § 3142(c)(3); *see also United States v. Angiulo*, 755 F.2d 969, 972 (1st Cir.1985). Upon consideration of a defendant's motion to amend an order of detention and to release the defendant upon conditions pending trial, a court may consider relevant changes of circumstance. *See United States v. Logan*, 613 F.Supp. 1227, 1229 (D.Mont.1985) (refusing to reconsider pretrial detention order based on changed circumstances where changes were not related to the issue of risk of flight).[1] The court may also consider proffers of additional evidence. *See United States v. Gallo*, 653 F.Supp. 320, 327 (E.D.N.Y.1986) (analogizing to Fed.R.Civ.P. 60(b), and finding that "[w]here significantly changed circumstances raise a new issue of law, and additional evidence is proffered, a judicial officer has inherent power to reconsider his or her own order.").

Magistrate Judge Laporte determined that no condition or combination of conditions could reasonably assure the appearance of the Defendant at future proceedings. She based her decision to detain Ishraiteh on four factors: (1) the Defendant was facing substantial penalties for the charged conduct; (2) the proceeds of the alleged fraud, totaling approximately $11.5 million dollars, had been transferred to an account with the Commerzbank, Luxembourg, and were "beyond the reach of the United States and available to the [D]efendant were he to be released from custody[ ]"; (3) the Defendant had access to additional assets which were not fully disclosed to Pretrial Services and also had numerous international contacts, "a minimum of three passports," and traveled extensively; and (4) the Defendant had minimal contacts and ties to both Massachusetts and California. (Def.'s Supp.Memo. in Support of Motion, Order on Detention and Removal at Att. A.)

Ishraiteh contends that there are changed circumstances and new evidence that warrant an amendment of the Detention Order, and he moves the Court to release him on conditions on the grounds that: (1) he has made restitution in the amount of $11.2 million to Vista Information Technologies ("Vista") and Aztec Information Partners ("Aztec"), the two companies he allegedly defrauded (Budreau Aff. ¶ 2)[2]; (2) he is likely to enter into a plea agreement with the Government, and the probable outcome of this agreement would be that the money laundering and forfeiture charges would be dropped, thereby significantly reducing the sentence Ishraiteh faces; (3) he has ties to Massachusetts; and (4) he was lawfully in possession of two valid passports.

That Defendant has made restitution to Vista and Aztec and no longer has access to the funds does not persuade the Court that he now lacks incentive and opportunity to flee. The Court reserves judgment on whether the act of repaying funds that had been attached and were subject to seizure is a reliable indicator of the Defendant's "extraordinary acceptance of responsibility" and "rehabilitation on the part of Ishraiteh." (Supp.Memo. at 4.) What is clear is the fact that Ishraiteh still has considerable assets with which he could potentially fund his flight, including $25,000 in his Citibank checking account

---

1. The changed circumstances alleged by the defendant in *Logan* included the following: (1) aggravated hypertension due to incarceration; (2) limited ability to assist defense counsel in preparing case due to incarceration; and (3) inability of defendant to meet with his wife (who was also his co-defendant) and counsel at the same time due to interference from jail officials. *See* 613 F.Supp. at 1229.

2. Mr. Budreau's affidavit, dated March 22, 1999, also states that Ishraiteh "is in the process of transferring another $350,000 from accounts in the United States" to the two companies. (Budreau Aff ¶ 2.)

and $13,000 in the Luxembourg account. (Budreau Aff. ¶ 2.)

At the hearing, counsel for Ishraiteh represented that under the Federal Sentencing Guidelines, Ishraiteh is really only facing 33 months, eight of which he has already served, and the balance of which he would likely spend between boot camp and a halfway house. The Government represented that Ishraiteh is facing at least three and one half years. Ishraiteh argues on the one hand that the amount of time he is facing simply does not create an incentive to flee. On the other hand, however, counsel for Ishraiteh emphasized at the hearing that the Defendant is experiencing difficulty at Plymouth where he is currently incarcerated, and that his time there has been "tough." Of course, most defendants would be eager to be released from custody. Ishraiteh's difficulty suggests, however, that he in fact would be highly motivated to avoid any further time served, no matter how brief. While this is entirely understandable, the fact that Ishraiteh may be facing a greatly reduced term of imprisonment does not persuade this Court that he now has no incentive to flee.

A somewhat closer question presents itself in the consideration of evidence regarding Ishraiteh's ties to Massachusetts. During the hearing, Ishraiteh presented the testimony of two witnesses who testified that they were close personal friends of the Defendant, and would be willing to serve as third party custodians for him. Neither has agreed to put up his home as surety.

Lou Pearlstein, a resident of South Hamilton, Massachusetts, testified that he met Ishraiteh in 1982 or thereabouts at Salem State College where Ishraiteh was an undergraduate and Pearlstein was a graduate student. Pearlstein befriended Ishraiteh, and the two developed a social relationship. Upon cross examination, however, it became clear that Pearlstein's contact with Ishraiteh in the past three years following Ishraiteh's move to California has been superficial at best. Pearlstein's testimony on cross examination even called into question the closeness of the two men prior to Ishraiteh's move as Pearlstein testified that he had no knowledge of the fact that Ishraiteh had sold his Swampscott, Massachusetts home because there were tax liens on it and foreclosure proceedings were imminent. Pearlstein admitted that his telephone correspondence with Ishraiteh tapered off after Ishraiteh moved to California. Pearlstein did know that Ishraiteh had sold his business, but knew nothing of the selling price or the details of any of the transactions. Pearlstein also testified that he had only learned of Ishraiteh's arrest very recently, in the week prior to the hearing.

Eldon Goodhue, a resident of Topsfield, Massachusetts, described Ishraiteh as a business and social friend whom he met in 1984 or thereabouts. Both Goodhue and Ishraiteh are active members of the Masonic Lodge. Goodhue testified that he believed Ishraiteh was both trustworthy and reliable. Upon cross examination, Goodhue admitted that he had limited personal contacts with Ishraiteh over the past few years, but that the level of phone contact between the two remained about the same. Further, Goodhue's response to questioning on re-cross examination regarding his knowledge of the attachment of Ishraiteh's Luxembourg account gives the Court pause and raises doubts as to his credibility.

Ishraiteh made Massachusetts his home for 17 years, and then moved to California approximately three years ago. He is a United States citizen, and represents that he plans to continue to live and work in this country. While it would not be accurate to say that Ishraiteh has no ties to Massachusetts, in light of the testimony of the Defendant's witnesses, the Court finds that Ishraiteh's ties to Massachusetts are tentative at best. Ishraiteh neither resides nor is employed in Massachusetts. He has no immediate family members living in the United States. His mother, who is ailing, lives in Jordan. His sister lives

in London, one of his brothers lives in Saudi Arabia, one lives in Jerusalem, and one divides his time between London and Jordan. He has no significant other, and no children. He simply does not have the type of established ties to Massachusetts sufficient to ensure his appearance at future proceedings if released.

The Government's case against Ishraiteh is robust. Notwithstanding the fact that he has surrendered his passports, he still has the means and expertise to evade further appearances before this Court. This Court agrees with Magistrate Laporte that there are no conditions, or combinations thereof, that could reasonably assure Ishraiteh's appearance at future proceedings. Neither the fact that Ishraiteh has made restitution to the two companies he allegedly defrauded, nor the possibility that the sentence he faces will be substantially reduced, nor the evidence presented regarding his ties to Massachusetts merit a revocation of the Detention Order issued on November 30, 1998, by Magistrate Judge Laporte.

Accordingly, the Defendant's motion to amend the Detention Order is hereby DENIED.

SO ORDERED.