NEW ENGLAND POWER COMPANY,
Petitioner,

v.

UNITED STATES of America and
Interstate Commerce Commission,
Respondents.

Baltimore and Ohio Railroad Company,
et al., Intervenors.

No. 82–1317.

United States Court of Appeals,
First Circuit.

Argued Oct. 6, 1982.

Decided Nov. 24, 1982.

Thomas Robinson, Providence, R.I., with whom Pasco Gasbarro, Jr., Thomas P. Peters, Westborough, Mass., Fritz R. Kahn, Robert R. Brinker, David A.K. Harland, Washington, D.C., were on brief, for petitioner.

John F. Donelan, and Frederic L. Wood, Washington, D.C., on brief, for intervenor Carolina Power & Light Co.

Charles J. McCarthy, and McCarthy, Sweeney & Harkway, Washington, D.C., on brief, for intervenors Commonwealth Edison Co., et al.

Timm L. Abendroth, with whom William F. Baxter, Asst. Atty. Gen., John Broadley, Gen. Counsel, Kathleen M. Dollar, Associate Gen. Counsel, John J. Powers, III and Kenneth Kolson, Attys., Dept. of Justice, Washington, D.C., were on brief, for respondents.

Michael Boudin, with whom Catherine W. Brown, J. Peter Byrne, Robert Batchelder, Washington, D.C., John A. Daily, Philadelphia, Pa., Samuel R. Freeman, Denver, Colo., Stuart F. Gassner, Chicago, Ill., James L. Howe, Richmond, Va., Richard W. Kienle, Roanoke, Va., Howard Koontz, Chicago, Ill., Thormund A. Miller, Carol A. Harris, San Francisco, Cal., Stuart Vaughn, Milton E. Nelson, Jr., Chicago, Ill., Hanford O'Hara, Washington, D.C., C. Harold Peterson, Minneapolis, Minn., Alan R. Post, Cottage Grove, Minn., Charles C. Rettberg, Jr., Cleveland, Ohio, Albert B. Russ, Jr., Jacksonville, Fla., and Michael Thompson, were on brief, for intervenor Railroads.

Before COFFIN, Chief Judge, TIMBERS,[*] Senior Circuit Judge, and BOWNES, Circuit Judge.

COFFIN, Chief Judge.

This case involves the implementation by the Interstate Commerce Commission ("the Commission") of § 229 of the Staggers Rail Act of 1980.[1] We review the Commission's decision in Ex Parte No. 411, *Complaints Filed Under Section 229 of the Staggers Rail Act of 1980,* 365 I.C.C. 507 (1982), that its most recently promulgated market dominance standards shall apply to savings clause cases under that section. We affirm.

## I. Background

Prior to the Railroad Revitalization and Reform Act of 1976 ("the Reform Act"),[2] all rail rates were subject to regulation by the Commission under the "just and reasonable" standard. The Reform Act, taking a major step towards deregulation of rail rates, required the Commission, before applying the just and reasonable standard, to find that the carrier whose rates were challenged had "market dominance" over the service to which the rate applied.

The Commission in late 1976, pursuant to § 202(b) of the Reform Act, established standards and procedures for determining whether a railroad possessed market dominance. Ex Parte No. 320, *Special Procedure for Making Findings of Market Dominance,* 353 I.C.C. 874 (1976), *modified,* 355 I.C.C. 12 (1976). The Commission set forth three conditions which, if proved by the party challenging a railroad's rates, would create a presumption of market dominance: (1) a market share presumption—the railroad carried 70 percent or more of the involved traffic in the preceding year; (2) a cost presumption—the railroad's rate exceeded its variable cost of providing service

---

[*] Of the Second Circuit, sitting by designation.

[1] 94 Stat. 1895, codified in various sections of 49 U.S.C. § 10101 *et seq.*

[2] 90 Stat. 31, codified in various sections of titles 15, 31, 45 and 49 U.S.C.

by 60 percent or more; and (3) a substantial investment presumption—the affected shipper had made a substantial investment in rail-related equipment or facilities that prevented or made impractical the use of another carrier or mode. Those presumptions could be rebutted by any relevant evidence except that relating to product or geographic competition. The Commission indicated that it would revise its rules "in light of actual experience." 355 I.C.C. at 13.

The Commission's regulations were upheld in major part on judicial review but remanded for a clarification of the cost presumption. *Atchison, T. & S.F. Ry. v. ICC,* 580 F.2d 623 (D.C.Cir.1978). The *Atchison* court, acknowledging criticism of the regulations from all sides,[3] noted that those regulations were only the "initial phase in the Interstate Commerce Commission's implementation of a new regulatory concept", *id.* at 639, and emphasized the need to re-evaluate those regulations in the light of experience.

> "The Commission will be in a position to evaluate the regulations more fully in the light of experience. That is an important feature of the administrative process. The courts remain open if the Commission is slothful or unwilling to undertake appropriate reconsideration and fine tuning in the light of experience." *Id.* at 640.

On remand for clarification, the Commission noted that it was undertaking a further analysis of its market dominance regulations and that in the meantime it would consider all pertinent rebuttal evidence, including that concerning product and geographic competition. 359 I.C.C. 735 (1979).

In a January 1980 rulemaking the Commission proposed abolition of the market share and substantial investment presumptions and substantial revision of the cost presumption. Ex Parte No. 320 (Sub-No. 1), *Rail Market Dominance and Related Considerations,* 45 Fed.Reg. 3353 (1980). While the Commission was considering comments on that proposal, Congress passed the Staggers Act, which significantly furthered the deregulation of rail rates that had begun with the Reform Act of 1976.

Section 202 of the Staggers Act directly superseded the Commission's cost presumption. It required a finding of no market dominance when a rail carrier established that its challenged rate would yield less than a given percent of variable cost, 49 U.S.C. § 10709(d)(2), and further provided that a finding that a rate is equal to or greater than the statutory variable cost percentage "does not establish a presumption" of market dominance, 49 U.S.C. § 10709(d)(4).

In December of 1980 the Commission withdrew its revised market dominance regulations, proposed in Ex Parte No. 320 (Sub-No. 1), and initiated Ex Parte No. 320 (Sub-No. 2) to reconsider the revision in light of the Staggers Act. *Market Dominance Determinations and Considerations of Product Competition,* 45 Fed.Reg. 83342 (1980). After a period for comments and review, the Commission, on July 8, 1981, revoked its market dominance presumptions and substituted a new set of market dominance guidelines. Ex Parte No. 320 (Sub-No. 2), 365 I.C.C. 118. Concluding that the presumptions did not necessarily reflect the degree of railroad market power and therefore yielded inaccurate market dominance determinations, the Commission created broad new guidelines that focus on four forms of competition: intermodal, intramodal, product, and geographic.[4] *Id.* at 120. The burden remained on complainants to prove a lack of effective competition. *Id.* at 132.

**3.** "The railroads see the Reform Act as directed at blowing away the clutter and cobwebs of outmoded regulation, permitting our rail system to regain initiative and vigor. Under this view, the Commission emerges as clutching on to its musty jurisdiction against the inroads of reform. The utilities complain that the railroads' enthusiasm for competition is marred by the tenacity of their grip on their antitrust exemption, a quest for power without responsibility." *Atchison, T. & S.F. Ry. Co. v. ICC,* 580 F.2d 623, 640 (D.C.Cir.1978).

**4.** The regulations require that the railroads come forward with any evidence of product or geographic competition. Once the railroad has done so, the shipper has the burden of proving that the identified competition is not effective.

The question before us in this case is what market dominance standards should be applied in proceedings under § 229 of the Staggers Act. Section 229 established that any rail rate in effect on the effective date of the Act "shall be deemed to be lawful and may not thereafter be challenged", but with the "savings provision" that "any interested party alleging that the rail carrier has market dominance over the transportation to which the rate applies . . . and that the rate is not reasonable" could file a complaint with the ICC within 180 days of the effective date of the Act.[5]

Almost 800 complaints, including that of petitioner New England Power Company, were filed before the cutoff date, March 30, 1982. 46 Fed.Reg. 24740 (1981). By July 1981, when the Commission's new market dominance guidelines were announced, hundreds of those complaints were pending before the Commission but few if any had proceeded to hearing. Approximately 300 complaints are still pending.[6]

In order to manage these § 229 cases and resolve common issues, the Commission ini-

tiated a proceeding, Ex Parte No. 411, *Complaints Filed Under Section 229 of the Staggers Rail Act,* to respond to various petitions and motions filed in those cases. Among those motions was that of petitioner New England Power, joined by other parties and filed on November 24, 1981, asking for a declaratory order that the new market dominance standards promulgated in Ex Parte No. 320 (Sub-No. 2) would not be used in pending § 229 cases. The Commission issued a decision on February 5, 1982, finding, *inter alia,* that the new market dominance standards shall apply. 365 I.C.C. 507.

Petitioner challenges that decision on two bases: (1) Congress intended that the previously promulgated market dominance standards apply to § 229 cases; (2) "retroactive" application of the new market dominance standards would create a manifest injustice towards shippers.

## II. *Congressional Intent*

■ Nothing in the Staggers Act speaks directly to the standards which the Commis-

---

The Commission's new regulations take an approach not unlike that urged originally by agencies with statutory responsibility for advising the Commission. Those agencies argued, at the time that the Commission first considered market dominance standards, that "the use of presumptions to find market dominance" inappropriately "oversimplifi[es] a complex area", *id.* at 630.

**5.** Section 229 provides in full:
"(a) Any rate that is in effect on the effective date of this Act for transportation by a rail carrier providing transportation subject to the jurisdiction of the Interstate Commerce Commission under subchapter I of chapter 105 of title 49, United States Code, may, during the 180-day period beginning on such effective date, be challenged in a complaint filed with the Interstate Commerce Commission by any interested party alleging that the rail carrier has market dominance over the transportation to which the rate applies, as determined under section 10709 of such title, and that the rate is not reasonable under section 10701a of such title.
(b) Any rate described in subsection (a) of this section—
(1) which is not challenged in a complaint filed within the 180-day period provided in such subsection; or

(2) which is challenged in such a complaint, but (A) the rail carrier is found not to have market dominance over the transportation to which the rate applies, or
(B) the rate is found to be reasonable, shall be deemed to be lawful and may not thereafter be challenged in the Commission or in any court (other than on appeal from a decision of the Commission).
(c) The provisions of this section shall not apply to any rate under which the volume of traffic moved during the 12-month period immediately preceding the effective date of this Act did not exceed 500 net tons and has increased tenfold within the 3-year period immediately preceding the bringing of a challenge to the reasonableness of such rate.
(d) The burden of proof in any proceeding under this section shall be on the complainant."
Other sections of the Act create new flexibility for future rate increases calculated from a "base rate" that is immunized from challenge by § 229. *See* 49 U.S.C. § 10707a.

**6.** According to the Commission, many of the complaints have been dismissed on motions of the parties following settlements.

sion should apply in determining market dominance in savings clause cases. Section 229 itself indicates only that market dominance shall be "determined under section 10709 of [title 49]." Section 202 of the Act amends § 10709 in a way that directly supersedes the cost presumption in the Commission's Ex Parte No. 320 (Sub-No. 1) market dominance guidelines, which were in effect at the time of the Act's passage. The final conference report indicates that such newly adopted jurisdictional standards shall apply to § 229 cases.

Petitioner argues that, except for the modification embodied in § 202, Congress intended that this last opportunity to challenge the reasonableness of existing rates should be subject to the Commission's then existing market dominance standards. Petitioner reasons by negative inference: because Congress explicitly modified one of the market dominance presumptions but was silent with respect to the others, it ratified the others by implication.

But this reasoning by negative inference from Congressional silence is as applicable to the validity of the new regulations as to their application in § 229 cases. The validity of the Commission's new market dominance regulations is not properly before us.[7] We must, therefore, assume the validity of the new regulations and look for evidence that Congress intended the market dominance regulations in effect at the time of the enactment of the Staggers Act to apply to § 229 cases despite the Commission's continuing authority to revise those regulations for other purposes.

Petitioner points to a statement by Commission Chairman O'Neal testifying on an earlier version of the savings provision of Staggers Act:

"This provision provides that rates in effect on the date of enactment of this bill could continue to be challenged under the existing provision of law (before enactment of this bill) for a period of six months after enactment. Thus, for six months after enactment, rates on file could be challenged for exceeding maximum reasonableness according to pre-enactment standards of maximum reasonableness." Railroad Transportation Policy Act of 1979: Hearings on S.1946 Before the Committee on Commerce, Science and Transportation, 96th Cong., 1st Sess. 129 (1979).

But Chairman O'Neal's statement addresses only standards of maximum reasonableness not market dominance,[8] standards that would have been altered by the version of the bill upon which he was commenting. Nor does any other portion of the legislative history brought to our attention express, even indirectly, the intent that agency regulations interpreting the statutory concept of market dominance should be different in § 229 cases than in any other cases.

Petitioner also relies on *Cleveland-Cliffs Iron Co. v. ICC,* 664 F.2d 568 (6th Cir.1981). The court there held that certain provisions of the Staggers Act, including § 202, could not be applied to a rate dispute that was pending at the time the Staggers Act was enacted. In reaching that result, the court apparently relied in part on an interpretation of § 229. Finding "no indication that the Commission, in deciding cases brought pursuant to section 229, was to make a rate reasonableness determination under the new statutory scheme", *id.* at 590 n. 26, the court reasoned that, *a fortiori,* Congress did not intend cases pending on appeal at the time of the Act to be decided under the new statutory scheme.

"Otherwise, we would have the rather anomalous result that parties challenging rates within 180 days after the new law was in effect would have an opportunity for review under the prior law while par-

---

**7.** Challenge to the validity of those regulations is currently pending in the Fifth Circuit. *Western Coal Traffic League, et. al. v. United States,* No. 81–4257 and consolidated cases (argued May 24, 1982).

**8.** Under § 229(a) a party challenging a carrier's rates must demonstrate both that "the rail carrier has market dominance over the transportation to which the rate applies ... *and* that the rate is not reasonable under section 10701a of such title." (Emphasis added).

ties who had cases pending or completed at the Commission would be subject to the new statutory scheme." *Id.*

We note first that the *Cleveland-Cliffs* court faced a wholly different question—whether statutory provisions of the Staggers Act should apply to previously pending cases—than that before us. Furthermore, insofar as its decision relied on the conclusion that Congress did not intend that changes in other parts of the Act, including § 202, should apply to savings clause cases under § 229, we must disagree. As noted above, § 229 indicates that market dominance shall be determined "under § 10709", which is amended by § 202, and the final conference report expressed the clear intent that newly adopted jurisdictional standards should apply to § 229 cases. H.R.Conf.Rep. No. 96–1430, 96th Cong., 2d Sess. 121, *reprinted in* [1980] *U.S.Code Cong. & Ad. News* 3978, 4153.

Congress, in the Reform Act of 1976, gave the Commission power to establish standards and procedures for determining market dominance. *Atchison, T. & S.F. Ry., supra,* 580 F.2d at 627. The final conference report on the Staggers Act disclaimed any intention "to restrict the ability of the Commission to apply [the market dominance] concept, both in its regulations and individual cases." H.R.Rep. No. 96–1430, 96th Cong., 2d Sess. 88, *reprinted in* [1980] *U.S.Code Cong. & Ad.News* 3978, 4120. While noting the necessity for the Commission to "revise its market dominance regulations" in accordance with provisions of the Staggers Act, Congress reiterated "the Commission's authority to determine market dominance." *Id.* In the absence of any showing to the contrary, we are unwilling to conclude that Congress intended that the Commission should not apply to savings clause cases its most currently promulgated regulations, reflecting its continuing attempts to define more accurately the statutory concept of market dominance.

"[T]he construction of a statute by those charged with its execution should be followed unless there are compelling indica-

tions that it is wrong . . . ." *FCC v. WNCN Listeners Guild,* 450 U.S. 582, 598, 101 S.Ct. 1266, 1276, 67 L.Ed.2d 521 (1981) (quoting *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969)). Assuming, as we must for purposes of this action, the validity of the agency's new market dominance standards, we find no basis for concluding that Congress intended that those regulations not apply to savings clause cases under § 229.

### III. *"Retroactivity"*

■ Petitioner argues further that, because the Commission's market dominance standards were not final until after the deadline for § 229 complaints, the Commission's application of those standards is unjustifiably retroactive and therefore an abuse of discretion. We note first that evaluation of market dominance is jurisdictional in nature and that "a jurisdictional ruling may never be made prospective only." *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 379, 101 S.Ct. 669, 676, 66 L.Ed.2d 571 (1981). The Commission is empowered to conduct rate reasonableness proceedings only when the carrier whose rates are challenged is demonstrated to have market dominance. *See* 49 U.S.C. § 10709(c). In so far as the Commission's new regulations are valid refinements of the statutory jurisdictional standard, implementing that standard more precisely, the Commission has no jurisdiction to set rates for a carrier who has not been demonstrated to have market dominance under those regulations.

Even in the case of non-jurisdictional standards, "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. Richmond School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). This is true even when a change in the law occurs while a case is pending on appeal. *Bradley, supra,* 416 U.S. at 712, 94 S.Ct. at 2016. It applies "with equal force

where the change is made by an administrative agency acting pursuant to legislative authorization." *Thorpe v. Housing Authority of the City of Durham,* 393 U.S. 268, 282, 89 S.Ct. 518, 526, 21 L.Ed.2d 474 (1969).

Under the manifest injustice standard the disappointment of private expectations that results from the implementation of a new rule must be balanced against public interest in the enforcement of that rule. *Adams Nursing Home of Williamstown, Inc. v. Matthews,* 548 F.2d 1077, 1080 (1st Cir.1977); *see also SEC v. Chenery Corp.,* 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947). The Commission found that the reliance of shippers in this case was not so extensive as to warrant a finding of manifest injustice. *Ex Parte No. 411, supra,* 365 I.C.C. at 511. It noted that all parties were aware that the new market dominance standards had been proposed and were pending at the time complaints were filed and that "[i]t is not unusual for new rules to be established during the course of a proceeding." *Id.* The Commission emphasized that the § 229 proceedings were only in the beginning stages of discovery when the new rules became final and that the new rules were not an abrupt departure from established practice. It thus found that any reasonable reliance on the part of shippers was outweighed by the "clear statutory and administrative interest in applying the new rules" which "represent [the Commission's] current thinking after five years of experience under the old rules." *Id.* at 512.

We find no abuse of discretion in the Commission's decision. Any expectations that shippers had that the old rules would apply should have been discounted "by the knowledge that occasional changes will be made to better carry out regulatory purposes." *Adams Nursing Home of Williamstown, Inc., supra,* 548 F.2d at 1081. This applies doubly here where rulemaking proceedings to alter the market dominance standards were underway when the rate complaints were filed and where the court decision upholding the validity of the old regulations had emphasized the need for the Commission to reevaluate those regulations in the light of experience. *See supra* p. 241.

Even if shippers could have reasonably expected that the Commission's previous regulations would apply, those regulations only created presumptions through which the complainant could establish a prima facie case of market dominance subject to rebuttal by any evidence of actual, effective competition, including product and geographic competition. And even a showing of market dominance only crossed the jurisdictional threshold to a further demonstration of what was a reasonable rate.

Weighed against this reliance interest is the substantial public interest, evinced by the Staggers Act and the Reform Act, in deregulation of those rail carriers who are in fact subject to effective competition. We cannot say that the Commission abused its discretion in determining that its most recent standards of market dominance should apply to pending § 229 cases.

*We affirm.*