**UNITED STATES of America, Plaintiff, Appellant,**

v.

**Ilario M.A. ZANNINO, Defendant, Appellee.**

**No. 85–1070.**

United States Court of Appeals, First Circuit.

Argued March 8, 1985.

Decided May 3, 1985.

---

**6.** Kazmaier does not pursue his frivolous negligence claims on appeal.

53

Breyer, Circuit Judge, dissented and filed an opinion.

* Of the District of Rhode Island, sitting by designation.

Diane M. Kottmyer, Boston, Mass., with whom Ernest S. Dinisco and Jane E. Serene, Sp. Attys., William F. Weld, U.S. Atty., and Jeremiah T. O'Sullivan, Sp. Atty., Boston, Mass., were on brief for plaintiff, appellant.

Joseph J. Balliro, Boston, Mass., with whom James L. Sultan, Boston, Mass., was on brief for defendant, appellee.

Before BREYER and TORRUELLA, Circuit Judges, and SELYA,* District Judge.

## TORRUELLA, Circuit Judge.

The matter is before us on appeal by the United States from a denial by the United States District Court for the District of Massachusetts of its motion to revoke the bail of defendant/appellee Ilario M.A. Zannino and to detain him, after hearing, pursuant to the Bail Reform Act of 1984, specifically 18 U.S.C. § 3142(e) and 3148(b).[1]

---

1. Section 18 U.S.C. § 3142(e) provides:

DETENTION.—If, after a hearing pursuant to the provisions of subsection (f), the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, he shall order the detention of the person prior to trial. In a case described in (f)(1), a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person and the community if the judge finds that—

"(1) the person has been convicted of a Federal offense that is described in subsection (f)(1), or of a State or local offense that would have been an offense described in subsection (f)(1) if a circumstance giving rise to Federal jurisdiction had existed;

"(2) the offense described in paragraph (1) was committed while the person was on re-

lease pending trial for a Federal, State, or local offense; and

"(3) a period of not more than five years has elapsed since the date of conviction, or the release of the person from imprisonment, for the offense described in paragraph (1), whichever is later. Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), section 1 of the Act of September 15, 1980 (21 U.S.C. 955a), or an offense under section 924(c) of title 18 of the United States Code."

Section 18 U.S.C. § 3148(b) provides:

(b) REVOCATION OF RELEASE.—The attorney for the Government may initiate a pro-

On September 19, 1983, a federal grand jury returned a twenty count indictment against Zannino and six others. The charges related to murders, gambling, and other illegal acts. When first brought before the magistrate on September 20, 1983, Zannino was ordered held without bail on the grounds that no conditions of pretrial release would reasonably assure his appearance at trial. Eventually, however, terms for release on bail were set. In his order dated December 23, 1983, the magistrate expressly found that Zannino posed a serious and substantial threat to the safety of the community and that, were it not for the fact that he had no authority to detain the defendant under the 1966 Bail Reform Act on those grounds, he would unhesitatingly order Zannino held without bail pending trial. Zannino was, therefore, released on bail in early January, 1984.

Shortly after the passage of the Bail Reform Act of 1984 in October of that year, the Government filed a motion to revoke bail as to Zannino and to hold a detention hearing, alleging, as grounds thereof, the previous findings of the magistrate concerning dangerousness to the community and the provision of the new 1984 Act which now provided for restrictive de-

tention without bail under those circumstances. 18 U.S.C. § 3142(e) (1984). Additionally, the Government submitted affidavits to support a finding of probable cause that the defendant had committed a felony while on pretrial release, which under the 1984 Act was grounds for revocation of bail. 18 U.S.C. § 3148(b) (1984). The magistrate denied the motion, finding that the 1984 Act did not apply to pending cases in which the defendant was already released on bail. In his order, however, he once again reiterated his conclusion that no condition or combination of conditions could reasonably assure the safety "of any other person" or the community in the absence of Zannino's pretrial detention. The magistrate's denial was thereafter affirmed by the district court and the government appealed. Thus, the specific issue before us is whether Sections 3142(e), which provides for the pretrial detention, and 3148(b), which provides for bail revocation, apply to a defendant released on bail prior to the effective date of the 1984 enactments.[2]

The Supreme Court has held that the federal courts must apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice

ceeding for revocation of an order of release by filing a motion with the district court. A judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release, and the person shall be brought before a judicial officer in the district in which his arrest was ordered for a proceeding in accordance with this section. To the extent practicable, a person charged with violating the condition of his release that he not commit a Federal, State, or local crime during the period of release shall be brought before the judicial officer who ordered the release and whose order is alleged to have been violated. The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer—

"(1) finds that there is—

"(A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or

"(B) clear and convincing evidence that the person has violated any other condition of his release; and

"(2) finds that—

"(A) based on the factors set forth in section 3142(g), there is no condition or combi-

nation of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or

"(B) the person is unlikely to abide by any condition or combination of conditions of release.

If there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community. If the judicial officer finds that there are conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions, he shall treat the person in accordance with the provisions of section 3142 and may amend the conditions of release accordingly."

2. Inasmuch as the constitutionality of a retrospective application of the 1984 Act is not now being challenged, the case must turn on the intent of Congress.

or where there is clear statutory direction or legislative history to the contrary. *Bradley v. Richmond School Board*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). *See United States v. Gennaro J. Angiulo*, 755 F.2d 969, 970 (1st Cir.1985) (Breyer, J.); *New England Power Co. v. United States*, 693 F.2d 239, 244 (1st Cir.1982). Furthermore, and more to the point, it is clear that the conditions under which a defendant is originally released on bail are subject to review when changed circumstances require that the release be reappraised.

That the decision releasing Zannino was not unalterable and, even as originally issued, was subject to revision at any time prior to trial, is particularly evidenced by the text of the section of the pre-1984 Act under which he was released:

A judicial officer ordering the release of a person on any condition specified in this section may at any time amend his order to impose additional or different conditions of release. *Provided* that, if imposition of such additional or different conditions results in the detention of the person as a result of his inability to meet such conditions or in the release of the person on a condition requiring him to return to custody, subsection (d) [requiring review] shall apply.

(Emphasis in original). Bail Reform Act of 1966, 18 U.S.C. § 3146(e), *repealed by* Bail Reform Act of 1984, 18 U.S.C. § 3142(c). Thus the decision regarding the terms of bail may be considered to have been an open matter, subject to post-bail release review, even before the 1984 Act was passed on October 12th.

We thus look to the situation created by the passage of the 1984 Act, to ascertain whether an individual in Zannino's position should in effect receive a privilege vis-a-vis all defendants charged after October 12th, notwithstanding the pendency of all their proceedings. Since nothing in the new Act or its legislative history suggests that the new Act does *not* apply, *Bradley* requires that we look to the "justice" or "injustice"

of the new Act's application. *United States v. Angiulo, supra*, at 970.

In our opinion in *Angiulo*, for a point of comparison with the facts in that case, we stated that a defendant released on bail prior to enactment of the new Act might have a stronger argument to support his contention that the pretrial detention provisions did not apply to his case. *Id.* By positing this hypothetical, we were not creating a hard and fast rule. Closer examination, within the context of an actual case and controversy, does not support this exception to the retroactivity of the new Act. Section 3146(e) of the 1966 Act clearly states that conditions of the release can be changed, and that the inability to meet such conditions could require the return to custody. Thus the release on bail allowed under the 1966 Act was not an absolute grant; defendants were given notice that a change in conditions or terms could bring about the revocation of the release. That statute, furthermore, created no expectation that conditions would not change.

What has actually occurred with the passage of the pretrial detention provision may be considered a statutorily mandated change in those conditions. That is, under Section 3142(e) of the 1984 Act, for a defendant to be eligible for pretrial bail, he must be able in certain instances to rebut the presumption that no condition or combination of conditions will reasonably assure the safety of "any other person and the community." 18 U.S.C. § 3142(e). We hold that defendants released under the 1966 Bail Act must show their continued eligibility for bail by meeting the newly imposed conditions if this issue is affirmatively raised by the Government.

Moreover, in the case at bar, Zannino had further indication of possible revocation of bail in that the magistrate, upon both granting the motion for bail and denying the government's motion for revocation of bail, emphatically stated that he found the appellee to be a danger to the community and that, had a legal mechanism by which he could detain Zannino existed, he would have done so. This clearly constituted no-

tice to appellee that a change of condition, such as has occurred by the passage of the 1984 Act allowing pretrial detention for dangerousness, would call for reevaluation of his release.

Under the manifest injustice standard of *Bradley, supra,* the disappointment of private expectations that results from the implementation of a new rule must be balanced against public interest in the enforcement of that rule. *New England Power Co., supra,* 693 F.2d at 245; *Adams Nursing Home of Williamstown, Inc. v. Mathews,* 548 F.2d 1077, 1080 (1st Cir.1977). Important public policy considerations dictated the enactment of a pretrial detention mechanism whereby the community could be safeguarded from the "alarming problem" of crimes committed "by demonstrably dangerous defendants" while on pretrial release. *See* Report of the Committee on the Judiciary, United States Senate, on S.1762, S.Rep. No. 225, 98th Cong., 1st Sess. at 1, 5–7 (1984), U.S.Code Cong. & Admin.News 1984, pp. 3182, 3184, 3187–3189. Logic and common sense, as well as the new Act's legislative history, dictate application of the new conditions to *all* dangerous defendants, including those previously released because of the lack of judicial power to prevent such a result.

Congress could scarcely have been plainer in indicating the concerns which prompted passage of the 1984 Act. S.Rep. No. 225, for example, explicitly remarked the need to confer "authority to deny release to those defendants who pose an especially grave risk to the safety of the community." *Id.* at 5. Furthermore, "[i]n the Committee's view, it is intolerable that the law denies judges the tools to make honest and appropriate decisions regarding the release of such defendants." This is strong talk, couched in a sense of legislative urgency. It is inconceivable to us that, in the face of such concerns, the Congress meant for the courts to temporize in the application of the pretrial release provisions of the 1984 Act by interdicting the use of such detention powers in *any* suitable case, whether or not the accused had previously been released under the more relaxed criteria of the 1966 Act. The legislative history, fairly read, represents a clear statutory directive favoring applicability of the new pretrial release scheme across the board. Indeed, the basic purposes of the new Act, as we delineated them in *Angiulo,* at 971–972, lead to the same conclusion.

The statistics cited by our dissenting brother are similarly unconvincing. The smallness of the potentially affected group is transmutable: it can be used just as powerfully to argue for, as against, the applicability of the 1984 Act. Neither this contention nor its corollary—ease in judicial administration—therefore cuts much ice. Even a single dangerous defendant left free to wreak havoc under circumstances where pretrial detention is constitutionally permissible and legally appropriate is one menace too many; and, if the price of protecting the public is more work for already overtaxed judges, it is a small price to pay for the wellbeing of the community.

Finding that, under the circumstances of this case, the defendant's expectation to remain free on bail is minimal, and is clearly outweighed by the public interest in protection from demonstrably dangerous defendants and that his professed reliance on limitless future liberty up to the date of his trial was, in these circumstances, unjustified, we conclude that under the *Bradley* and *New England Power Co.* standards, Sections 3142(e) and 3148(b) apply retroactively to Zannino, and that the government is entitled to a hearing before the magistrate on the merits of the issues raised by its motion to revoke.

We recognize that other courts have reached a contrary conclusion, *e.g., United States v. Fernández-Toledo,* 749 F.2d 703, 705 (11th Cir.1985), and we do not lightly create a split among the circuits. Yet, mindful of the nature of the rights involved, the impact of the change in law upon those rights, the will of the Congress, and the substantial public interest which we perceive to be at stake, we must respectfully disagree with the rationale of the Eleventh Circuit. The *Fernández-To-*

*ledo* panel, without in-depth analysis of either the provisions of the 1966 Act or the legislative history of the 1984 Act, held under circumstances comparable to those at bar that the defendant's "rights to bail had already vested," *id.*, and therefore declined to give the new law retrospective effect in such a situation. We are not of a similar mind. To be "vested," a thing must be "fixed; ... settled; absolute ...; not contingent." H. Black, *Black's Law Dictionary* at 1401 (5th Ed.1979). The cession of bail partakes of none of these characteristics; it is a privilege extended, as even the 1966 Act evidenced, on a contingent, nonabsolute basis, entirely subject to the dynamics of change, consistent with applicable law and fundamental fairness.

For the reasons which we have noted above, we do not view Zannino's right to release on bail as having been "vested" in any meaningful sense of that term and we see no sufficient reason why he should be immune from the provisions of the 1984 Act in this regard.

The decision of the district court is *reversed.*

BREYER, Circuit Judge (dissenting).

The issue in this case is whether the provision of the new Bail Act that provides for detention of "dangerous" persons, 18 U.S.C. § 3142(f), applies to a person already released on bail the day the new Act was passed (October 12, 1984). This court has previously suggested (though it did not expressly hold) that Congress did not intend this provision of the Act to apply, in a sense "retroactively," to those persons. *United States v. Anguilo,* 755 F.2d 969, 970 (1st Cir.1985). I believe the suggestion is correct for the following reasons.

First, it is "manifestly unfair" to apply the new detention provision to those released on bail before the new law was passed. *See Bradley v. Richmond School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). Magistrates and judges specifically gave those defendants their provisional freedom. The defendants in all likelihood relied on the fact

that (in the absence of misbehavior) they would remain free to prepare their trial defense, to interview witnesses, to consult with their attorneys. Trials, for most members of this class, must be imminent. Application of the new standard to members of this class threatens to interfere severely with ongoing defense preparations, not only because it may place a defendant behind bars just before trial, but also because even appearance at a bail revocation hearing, at this stage in the new Act's life, involves briefing and arguing a host of novel and difficult legal issues, threatening significantly to divert counsel's and client's attention and energies away from the trial on the merits nearly at hand. This burden, along with the likely surprise, adds up to a serious, adverse interference with a settled expectation. That means "unfairness." *See Myers v. Hawkins,* 362 So.2d 926, 933 n. 25 (Fla.1978) (" 'One of the fundamental considerations of fairness recognized in every legal system is that settled expectations honestly arrived at with respect to substantial interests ought not to be defeated.' ") (quoting 2 Sands, *Sutherland Statutory Construction* § 41.-05 at 261 (4th ed. 1973)).

Second, not to apply the detention provision of the new Act to previously released defendants does not interfere significantly with Congress's objective: giving judges a way to deal with "dangerous" defendants. The number of persons already free on bail (as of October 12) is rapidly diminishing. The Director of the Administrative Office of the United States Courts reports that approximately 18,000 indictments or charges are pending at any one time. The average length of time between charge and trial is 4.4 months. Thus even if *all* federal defendants facing charges on October 12 were on release (with an average time of 2.2 months remaining before trial), by now (April 1985) there must be only a handful of pre-October 12 defendants whose trials have not yet begun. Can one say that, in terms of Congressional purpose, it is of critical importance to apply the new Act to this small (and diminishing) class of per-

sons, when Congress itself considered adoption of this "dangerous person" provision for almost twenty years? *See* S.Rep. No. 225, 98th Cong., 1st Sess. 7 & n. 19 (1983), *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3189 & n. 19 (Supp. 9A).

Third, the courts that have considered this question have held that the Act does not apply to this class of persons. *United States v. Fernandez-Toledo*, 749 F.2d 703, 705 (11th Cir.1985) (per curiam) (holding that such persons have rights that have "vested" and that "it would be manifestly unjust" to apply the new Act to them); *United States v. Mitchell*, 600 F.Supp. 164 (N.D.Cal.1985) ("Congress apparently did not contemplate that individuals released pursuant to [the old Act] would be subject to sanctions under [the new Act]."); *see United States v. Payden*, 759 F.2d 202 (2d Cir.1985) (reversing district court decision ordering detention, under provisions of the new Bail Act, of defendant whose release had been ordered pursuant to provisions of the old Bail Act). Even were I less convinced of the correctness of *Anguilo*, I would hesitate to create a split in the circuits over this particular legal issue.

Fourth, there is additional support in the language of the new Bail Act itself. The new Act does not contain a provision that allows the government to recall a defendant solely for the purpose of applying the new, stricter standard of release. The new Act (like the old) does provide for reconsideration and modification of *release conditions, see* § 3142(c) (allowing imposition of "additional or different conditions of release"), but this provision does not authorize a "modification" that changes a release order into an unconditional detention order. The new Act also permits the government to seek bail *revocation, see* § 3148, but only if the government can show that the defendant has violated his release conditions. Of course, there is substantial authority for the proposition that courts have an "inherent power" to revoke bail when necessary to insure the defendant's appearance or to protect the integrity of the *judicial* process. *See, e.g., Carbo v. United States*, 82 S.Ct. 662, 667–69, 7 L.Ed.2d 769

(Douglas, Circuit Justice) (protection of witnesses) (1962); *Fernandez v. United States*, 81 S.Ct. 642, 5 L.Ed.2d 683 (1961) (Harlan, Circuit Justice) (protection of witnesses and "orderly progress of the trial"); *United States v. Abrahams*, 575 F.2d 3 (1st Cir.) (risk of flight), *cert. denied*, 439 U.S. 821, 99 S.Ct. 85, 58 L.Ed.2d 112 (1978); *United States v. Melville*, 306 F.Supp. 124, 127 (S.D.N.Y.1969) (same); *United States v. Graewe*, 689 F.2d 54 (6th Cir.1982) (per curiam) (protection of witnesses and judicial process); *United States v. Gilbert*, 425 F.2d 490 (D.C.Cir.1969) (per curiam) (protection of witnesses); *United States v. Bentvena*, 288 F.2d 442 (2d Cir.1961) (integrity of judicial proceedings); *cf. United States v. Anguilo, supra*, at 972. But there is no authority extending that *"inherent"* power to instances of defendant "dangerousness."

Finally, the legislative history of the new Act, as the majority effectively concedes, proves little. Its language demonstrates congressional concern *both* for preventing crimes and for treating accused persons fairly. *See, e.g.,* S.Rep., *supra*, at 22 (noting "the importance of the interests of the defendant which are implicated in a pretrial detention hearing" and the "due process" considerations in establishing the procedural requirements of the new Act).

The arguments advanced in favor of applying the new provision (in a sense) retroactively to those previously released are unconvincing. The government says that, if the new Act does not apply in its entirety to these defendants, then no law applies to them, for Congress repealed the old 1966 Bail Reform Act as of October 12, 1984. This argument is incorrect. When, for some reason or other, a new provision in a new law does not (or cannot) apply to a particular situation or person, courts typically hold that the former law survives and governs that circumstance or person, whether or not the new law "expressly" repeals the old law as of a certain date. Thus, for example, Congress has repealed the Youth Corrections Act as of October 12, 1984, *see* Pub.L. No. 98–473, Title II,

§ 218(a)(8), 98 Stat. 1837, 2027 (1984), but, as the Department of Justice has recognized, it may be unconstitutional under the *ex post facto* clause to apply certain portions of Congress's substitute to certain defendants who committed crimes prior to that date. *See* U.S. Dept. of Justice, *Handbook on the Comprehensive Crime Control Act of 1984 and Other Criminal Statutes Enacted by the 98th Congress* 32 (1984). As to those persons, the Department says, the old (repealed) law will still apply. *Id. See also United States v. Romero,* 596 F.Supp. 446 (D.N.M.1984). A similar approach in this case is in accord with well established legal precedent. *See, e.g., United States v. Payden, supra* (holding that defendant's bail status should be determined under provisions of old Bail Act, even after its repeal, where bail application had first been considered under provisions of old Act); *United States Gypsum Co. v. Uhlhorn,* 232 F.Supp. 994, 1004 (E.D.Ark.1964), *aff'd,* 366 F.2d 211 (8th Cir. 1966), *cert. denied,* 385 U.S. 1026, 87 S.Ct. 753, 17 L.Ed.2d 674 (1967); *State v. McMillin,* 150 Colo. 23, 370 P.2d 435 (1962) (en banc); *In re Opinion of the Justices,* 89 N.H. 563, 198 A. 249 (1938); *Waddell v. Mamat,* 271 Wis. 176, 72 N.W.2d 763 (1955); *see generally* 82 C.J.S. Statutes § 435 at 1010–11 (1953). Thus, to hold that Congress did not intend to apply the "dangerous person" provision retroactively does not create a legal vacuum.

The government also argues that it is not unfair to apply the new provision to this *particular* defendant because he did not *in fact* rely upon guarantees of continued freedom. It does not make sense here, however, to apply an "unfairness" test on a case-by-case basis. The very act of doing so creates unfair burdens, for it injects a new, and potentially unresolvable, issue into each bail revocation proceeding. Rather, to prevent serious unfairness the Act must not apply to the *class* of persons already released on bail on October 12, avoiding unfairness by creating a bright, judicially administrable line.

Further, the government argues that not to apply the new provision retroactively leaves it without a remedy against one (allegedly like the defendant here) who commits a crime while free on bail. This is not so. For one thing the government could indict the person for that crime (whether it was committed before or after October 12, 1984), at which point the government could seek his detention under the new law. For another thing, the new Bail Act allows the magistrate to attach a new condition to a defendant's pre-October 12 bail order—the condition that he not commit new crimes while on release. To attach this condition to the bail of one previously released does not seem unfair. Indeed, the old Act provides magistrates and judges with the express authority to modify release conditions. *See* 18 U.S.C. § 3146(e) (repealed October 12, 1984). In this case, the magistrate attached a condition on October 31, 1984, that Zannino not commit any crimes while on release. Thus, Zannino's release conditions currently (and lawfully) permit revocation if the government shows that he has committed crimes after October 31, 1984. *See* § 3148(b). In addition, the government is free to seek his indictment for any offense committed before that date, or to seek further modification of his release conditions, § 3142(c).

Finally, the majority points to a provision in the former 1966 law that allows a magistrate to impose "additional or different conditions of release" upon a person free on bail. Bail Reform Act of 1966, 18 U.S.C. § 3146(e), *repealed by* Bail Reform Act of 1984, 18 U.S.C. § 3142(c). The majority thinks the existence of this provision makes it more fair to apply the new law retroactively to those already free on bail. I disagree, basically because a new "release" condition seems to me very different from an unconditional detention order.

For the foregoing reasons, I believe Congress did not intend the "dangerous person detention" provision of the new Bail Act to apply to those already free on bail on October 12.

And, I would affirm the judgment of the district court.