J. Paul DEMARS, d/b/a J. Paul Demars
Construction, Plaintiff, Appellee,

v.

FIRST SERVICE BANK FOR SAVINGS,
n/k/a People's Savings Bank of
Worcester, Defendant, Appellee.

Appeal of FEDERAL DEPOSIT
INSURANCE CORPORATION,
Defendant.

No. 89–2073.

United States Court of Appeals,
First Circuit.

Submitted March 8, 1990.

Decided July 2, 1990.

John J. Graubard, Sharon P. Sivertsen,
Steven A. Solomon, Backus, Meyer & Solo-
mon, Thomas A. Rose, Deputy Gen. Coun-
sel, Ann S. DuRoss, Asst. Gen. Counsel,
and Rae Schupack Nathan, Regional Coun-
sel, on brief for appellant.

Before CAMPBELL, Chief Judge,
COFFIN, Senior Circuit Judge, and CYR,
Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

The question raised in this appeal is
whether a jurisdictional provision contained
in the Financial Institutions Reform, Re-
covery, and Enforcement Act of 1989
("FIRREA" or "the Act"), Pub.L. No. 101–
73, 103 Stat. 183, 216–17 (1989), codified at
12 U.S.C. § 1819 (1989), applies to an action
that was already pending on the date of
FIRREA's enactment. The district court
held that it does not. We are unable to
agree.

I.

The relevant, undisputed facts are as fol-
lows:

1. In March 1989, the Acting Commis-
sioner of Banks of the Commonwealth of
Massachusetts (the "Commissioner") took
possession of the business and property of
First Service Bank for Savings ("First Ser-

vice"), a Massachusetts savings bank. On the same day, the Commissioner appointed the Federal Deposit Insurance Corporation ("FDIC") as liquidating agent for First Service.

2. Also apparently in March of 1989, the FDIC entered into a Deposit Insurance Transfer and Asset Purchase Agreement ("DITAPA") with Peoples Saving Bank of Worcester ("Peoples"). The DITAPA provided for the transfer of the insured deposits from First Service to Peoples and for the purchase of certain assets by Peoples.

3. In June 1989, plaintiff J. Paul Demars, a New Hampshire corporation doing business as J. Paul Demars Construction ("Demars"), brought suit in the New Hampshire Superior Court against Peoples and the FDIC. Demars alleged that in January 1989 (prior to the appointment of the FDIC as receiver of First Service and prior to the FDIC's DITAPA with Peoples), First Service had wrongfully induced Demars to continue working on a construction project that First Service was financing. Demars further alleged that it had never received payment (totaling $68,343.58) for its work. Demars sought to hold Peoples and the FDIC responsible for First Service's actions, and it instituted Ex Parte Attachment proceedings in the state court.

4. On June 30, 1989, the FDIC filed a petition for removal of the case to the United States District Court for the District of New Hampshire. The original removal notice asserted as grounds for removal 28 U.S.C. § 1441 (general removal) and 28 U.S.C. § 1442(a)(1) (action against federal officer or agency).[1]

5. On August 9, 1989, while the FDIC's petition for removal was pending in federal court, the President signed FIRREA into law. Section 209 of FIRREA amends section 9 of the Federal Deposit Insurance Act, 12 U.S.C. § 1819. Among other

things, the amendment (1) enlarges the district courts' subject matter jurisdiction over actions in which the FDIC is a party; and (2) grants the FDIC the right to bring an interlocutory appeal from any district court remand order.[2]

6. On August 17, 1989, eight days after the passage of FIRREA, plaintiff moved to remand the action to the New Hampshire Superior Court, arguing that the district court lacked subject matter jurisdiction over the action because "all of the defendants named in plaintiff's complaint and properly served in this action did not join in the petition for removal."

7. The FDIC then supplemented its removal papers, asserting that all defendants had consented to removal and that the district court had jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332, as well as section 209 of FIRREA.

8. On September 26, 1989, the district court ruled on plaintiff's motion. It rejected plaintiff's argument that all the named defendants had not joined in the petition for removal, but nevertheless granted plaintiff's motion on the ground that the court lacked subject matter jurisdiction.[3] The court refused to apply section 209 of FIRREA "retrospectively" to the instant action, and found diversity jurisdiction lacking because the FDIC, as receiver of a state bank, was not "a citizen of a state." The court ordered the action remanded to state court.

9. The FDIC then filed a notice of appeal. We accept appellate jurisdiction and reverse.[4]

## II.

■ As noted above, the President signed FIRREA into law on August 9, 1989, seven weeks before the district court entered its remand order. We find that,

---

**1.** The FDIC later withdrew its reliance on 28 U.S.C. § 1442(a)(1).

**2.** The relevant text of section 209 is set out in note seven, *infra.*

**3.** The court framed its discussion as follows: "Compelling reasons ... exist for granting the

motion to remand despite plaintiff's apparent misunderstanding of the law."

**4.** Plaintiff chose not to file an appellate brief, and this case was submitted without oral argument.

because FIRREA is silent as to its effective date (and because no legislative intent exists to the contrary) FIRREA became effective on the date of enactment. *See United States v. Ferryman*, 897 F.2d 584, 588–89 (1st Cir.1990) (Absent legislative intent to the contrary, the general presumption is "that statutes become effective at the moment they are signed into law."); *Air–Shields, Inc. v. Fullam*, 891 F.2d 63, 65 (3d Cir.1989) ("Absent provisions to the contrary, federal legislation becomes effective on the date of enactment."); *United States v. York*, 830 F.2d 885, 892 (8th Cir. 1987) (same). *See generally* 2 N. Singer, *Sutherland Stat. Const.* § 33.06, at 12 (4th ed. 1986) ("A statute takes effect from the date of its passage unless the time is fixed by constitution or otherwise provided in the statute itself.").

As FIRREA went into effect while the present case was pending before the district court, we must decide whether section 209 of FIRREA applies to actions pending on the date of enactment. In ruling in the negative, the district court stated that "[t]here exists no language in FIRREA which manifests any intention that the [A]ct, particularly [section 209], should be construed retrospectively." While we agree that no such "retrospective" language exists (the text and legislative history of FIRREA are silent as to whether the Act's jurisdictional provisions apply to pending cases), we nevertheless conclude that section 209 of FIRREA applies to the present action. In so holding, we join two of our sister circuits that have applied FIRREA to pending actions. *See In Re Resolution Trust Corp.*, 888 F.2d 57, 58 (8th Cir.1989) (section 209 of FIRREA gives court jurisdiction to hear appeal from case pending when FIRREA was passed, "notwithstanding our former ruling that we lacked jurisdiction under preexisting law"); *Triland Holdings & Co. v. Sunbelt Service Corp.*, 884 F.2d 205, 207 (5th Cir.1989) (section 209 of FIRREA "eliminates any concern that the federal court may lack jurisdiction in these [pending] cases"). *But see Oreto Associates, Ltd. v. Otero Savings & Loan Ass'n*, 723 F.Supp. 559, 561 (D.Colo. 1989) ("[S]ince that Act [FIRREA] took

effect August 9, 1989, after the instant action was removed to this court, I am not persuaded that it applies to this case.").

Without specific guidance from the Act's text or legislative history, our analysis of whether section 209's expansion of jurisdiction applies to pending actions depends upon which of two differing legal presumptions controls. The first presumption is that "a court is to apply the law in effect at the time it renders its decision," unless doing so would result in "manifest injustice." *Bradley v. Richmond School Board*, 416 U.S. 696, 716, 94 S.Ct. 2006, 2019, 40 L.Ed.2d 476 (1973). In *Bradley*, the Supreme Court relied on this presumption to hold that a statutory provision for attorney's fees applied to a fee request that was pending when the statute took effect. This circuit has applied the *Bradley* presumption on numerous occasions. *See, e.g., Aledo–Garcia v. Puerto Rico Nat. Guard Fund Inc.*, 887 F.2d 354, 358 (1st Cir.1989) (applying *Bradley* presumption to amended version of Age Discrimination in Employment Act, which removed upper age limit from the law, holding that the amendment applied to pending case); *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1084 (1st Cir. 1986) (applying *Bradley* presumption to amended version of section 7002 of the Resource Conservation and Recovery Act, which eliminated 60–day notice requirement for cases involving hazardous waste violations, holding that amendments applied to pending case); *New England Power Co. v. United States*, 693 F.2d 239, 244–45 (1st Cir.1982) (applying *Bradley* presumption to Interstate Commerce Commission's new "market dominance" regulations, holding that the Commission did not abuse its discretion in applying new regulations to pending cases). *See generally U.S. Ex Rel. LaValley v. First Nat. Bank of Boston*, 707 F.Supp. 1351, 1356–1359 (D.Mass.1988) (discussing case law).

The second presumption, pointing in a different direction, is that "statutes affecting substantive rights and liabilities ... have only prospective effect." *Bennett v. New Jersey*, 470 U.S. 632, 639, 105 S.Ct.

1555, 1560, 84 L.Ed.2d 572 (1984). *See also United States v. Security Industrial Bank*, 459 U.S. 70, 79, 103 S.Ct. 407, 412, 74 L.Ed.2d 235 (1982). This circuit has applied this presumption as well. *See, e.g., Dion v. Secretary of Health and Human Services*, 823 F.2d 669, 671 (1st Cir.1987) (applying presumption to amendment to Social Security Act, which created new offset provision for disability payments, holding that such provision does not apply to pending case).

In the present circumstances, we believe the *Bradley* presumption provides the standard by which to determine the effect on pending cases of Congress's enlargement of federal jurisdiction where the FDIC is involved. Section 209 of FIRREA does not in any way alter substantive rules of conduct, *see, e.g., Friel v. Cessna Aircraft Co.*, 751 F.2d 1037, 1039 (9th Cir.1985) (rejecting presumption of prospective-only effect where "[n]o conduct on the part of either party would have differed if the statute had been in effect at the time of the fatal incident"), and thus no argument can be made that this provision is either one that "interferes with antecedent rights" or one "by which human action is regulated." *Dion*, 823 F.2d at 671 (quoting *Union Pacific R.R. v. Laramie Stock Yards Co.*, 231 U.S. 190, 199, 34 S.Ct. 101, 102, 58 L.Ed. 179 (1913)). Accordingly, we turn to whether, under *Bradley*, applying section 209 of FIRREA will result in "manifest injustice".[5]

Under the manifest injustice standard, "the disappointment of private expectations that results from the implementation of a new rule must be balanced against public interest in the enforcement of that rule."

*New England Power Co. v. United States*, 693 F.2d 239, 245 (1st Cir.1982). *Accord Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1084 (1st Cir. 1986). Here, we discern no such "disappointment of private expectations." FIRREA became law prior to the beginning of any state court proceedings on the merits of plaintiff's claim.[6] Plaintiff did not allege below, nor can we surmise on appeal, that he has suffered any significant detriment in reliance on the "nonretroactivity" of FIRREA. The public interest, moreover, strongly favors enforcement of FIRREA in this case, especially upon consideration of the wastefulness that would result if we allow the case to be remanded to state court only to have the FDIC petition for removal again under FIRREA. *Cf., e.g., Sandefur v. Cherry*, 718 F.2d 682, 684–85 (5th Cir.1983) ("it would be wasteful to both the parties and the courts to dismiss this appeal for lack of federal jurisdiction, for it could be at once refiled"); *Yegen Associates, Inc. v. F.S.L.I.C.*, 1989 U.S. Dist. LEXIS 16097, *2 (D.Tex. Sept. 25, 1989) ("it would be wasteful for both the parties and the courts, and it would unnecessarily increase the cost of litigation, for this Court to remand this case to the state court—only to have RTC immediately remove the case back to federal court"). Without question, the application of section 209 to the present case will resu`t in no manifest injustice.

### III.

We now apply the relevant portion of section 209 (which is set out in the margin[7]) to determine (1) whether we have

---

5. We find the *Bradley* presumption applicable even though it is unclear whether Congress passed section 209 in response to a "perceived gap" in the statutory jurisdictional scheme. *See Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1084 (1st Cir.1986) ("We hold, therefore, that at least where Congress has expanded the jurisdiction of the courts in response to a perceived gap in a statutory jurisdictional scheme, it is proper for us to apply the rule of *New England Power* and *Bradley*.").

6. We therefore need not address the issue of FIRREA's applicability to actions in which the state court proceedings are at a later stage.

7. Among other things, section 209 of FIRREA creates subsection (b)(2) of 12 U.S.C. § 1819, titled "Federal Court Jurisdiction," which reads:

(A) *In general*
Except as provided in subparagraph (D), all suits of a civil nature at common law or in equity to which the [Federal Deposit Insurance] Corporation, in any capacity, is a party shall be deemed to arise under the laws of the United States.

jurisdiction to entertain this appeal; and (2) whether the district court has jurisdiction to entertain the underlying action.

▮ The FDIC is appealing from a district court's remand order. Section 209 of FIRREA expressly allows the FDIC to "appeal any order of remand entered by any United States district court." 12 U.S.C. § 1819(b)(2)(C). This provision overcomes paragraph (d) of the general removal statute, which makes orders of remand unreviewable. *See* 28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise...."). We plainly, therefore, have jurisdiction to hear the FDIC's appeal from the district court's September 26, 1989 remand order.

▮ It is equally plain that FIRREA conferred upon the district court subject matter jurisdiction over the instant action. Prior to the passage of FIRREA, the federal courts had subject matter jurisdiction over "[a]ll suits of a civil nature at common law or in equity to which the [Federal Deposit Insurance] Corporation shall be a party...." 12 U.S.C. § 1819 (1988). Excepted from this broad grant of jurisdiction were suits in which (1) "the Corporation [was] a party in its capacity as receiver of a State bank" and (2) "only the rights or obligations of depositors, creditors, stockholders, and such State bank under State law" were involved. *Id.* Under the previous version of the law, it was not clear whether this "state action" exception precluded district courts from exercising juris-

diction over actions such as the present one, in which—absent the presence of the FDIC acting as receiver—the district court would have diversity jurisdiction. *Compare F.D.I.C. v. La Rambla Shopping Center*, 791 F.2d 215, 221 (1st Cir.1986) (noting that federal courts have "uniformly denied" diversity jurisdiction in cases in which the FDIC acts as receiver) (dicta) *with F.D.I.C. v. Elefant*, 790 F.2d 661, 666 (7th Cir.1986) (noting that it is not clear whether jurisdiction exists "where there would have been diversity between the bank and the adverse parties," and concluding that "there is no reason to think that Congress demanded that claims properly in federal court without regard to the FDIC be sent to state courts.") (dicta).

With the passage of FIRREA, the latter issue was settled in favor of conferring federal court jurisdiction. Section 209 added the following "Rule of Construction:"

> Subparagraph (D) [the "state action" exception] shall not be construed as limiting the right of the [Federal Deposit Insurance] Corporation to invoke the jurisdiction of any United States district court in any action described in such subparagraph *if the institution of which the Corporation has been appointed receiver could have invoked the jurisdiction of such court.*

12 U.S.C. § 1819(b)(2)(E) (emphasis added). *See* note seven, *supra.* The above language makes it plain that the "state action" exception does not limit the FDIC's right to invoke the jurisdiction of the district court, since First Service, as the "insti-

---

(B) *Removal*

Except as provided in subparagraph (D), the Corporation may, without bond or security, remove any action, suit, or proceeding from a State court to the appropriate United States district court.

(C) *Appeal or remand*

The Corporation may appeal any order of remand entered by any United States district court.

(D) *State actions*

Except as provided in subparagraph (E), any action—

(i) to which the Corporation, in the Corporation's capacity of receiver of a State insured depository institution by the exclusive appointment by State authorities, is a party other than as a plaintiff;

(ii) which involves only the preclosing rights against the State insured depository institution, or obligations owing to, depositors, creditors, or stockholders by the State insured depository institution; and

(iii) in which only the interpretation of such state law is necessary,

shall not be deemed to arise under the laws of the United States.

(E) *Rule of construction*

Subparagraph (D) shall not be construed as limiting the right of the Corporation to invoke the jurisdiction of any United States district court in any action described in such paragraph if the institution of which the Corporation has been appointed receiver could have invoked the jurisdiction of such court.

tution of which the Corporation has been appointed receiver," could have "invoked the [diversity] jurisdiction" of the district court.[8]

*Reversed and remanded for proceedings consistent with this opinion. Costs to appellant.*

---

**8.** We need not consider other plausible grounds for reversal offered by the FDIC, namely that the "state action" exception does not apply because the instant case involves (1) issues of federal law, such as the legality of the ex parte attachment proceeding, and (2) the interpretation of New Hampshire law, rather than Massachusetts law, the state in which the FDIC was appointed receiver.