POLITZ, Chief Judge,
with whom GARWOOD, HIGGINBOTHAM, WIENER, and EMILIO M. GARZA, Circuit Judges, join, dissenting:
I cannot accept the major disruption of federal practices and procedures and the gross intrusion on the state judicial systems fostered by the majority opinion and therefore respectfully dissent. Persuaded that the removal of this case was inappropriate and improper, I would affirm the order of remand.
I briefly restate the procedural history and posture of these proceedings. Meyer-land Co. and William M. Adkinson sued Continental Savings Association in state court in Texas for usury, fraud, fraud in the inducement, and misrepresentation. Continental counterclaimed for fraud and breach of contract. As damages, the trial court awarded Continental $30,031,089.99 and Adkinson $1,124,109.59. Meyerland and Adkinson appealed.
The parties had submitted their appellate briefs when, on September 30, 1988, the Federal Home Loan Bank Board declared Continental insolvent and appointed the Federal Savings and Loan Insurance Corporation as receiver. The FSLIC removed to federal district court but the case was remanded on April 21, 1989. On August 9, 1989, the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA), Pub.L. 101-73, 103 Stat. 183, was enacted and the FDIC succeeded the FSLIC as Continental’s receiver. Claiming authority under FIRREA, 12 U.S.C. § 1819(b)(2)(B)),[1] the FDIC removed the cause. Our district court again remanded and imposed $2500 in sanctions upon the FDIC. The FDIC timely appealed.[2]
FIRREA expands the original and removal jurisdiction of the district courts by permitting the FDIC to remove cases which ordinarily would have been matters for the state courts. See Carrollton-Farmers Branch Independent School District v. Johnson & Cravens, 889 F.2d 571 (5th Cir.1989); Triland Holdings & Co. v. Sunbelt Service Corp., 884 F.2d 205 (5th Cir.1989). The majority accepts the FDIC contention that FIRREA also allows the removal of a state court case even if the time *523 for relief from judgment has run and the action is before a state appellate court. In cases in which Fed.R.Civ.P. 60 relief is not available, the disposition urged by the FDIC mandates one of two results: The federal district court, in reviewing the case on the merits, exercises appellate jurisdiction over the state court; or the district court must accept as its own the decision of the state court and immediately turn the case over to the appropriate federal court of appeals. I reject both alternatives and would conclude that if Rule 60 relief is either unavailable or not sought, FIRREA neither authorizes nor requires removal of a case from a state appellate court to a federal district court.
FIRREA, at 12 U.S.C. § 1819(b)(2), provides in pertinent part:
(A) In general
Except as provided in subparagraph (D), all suits of a civil nature at common law or in equity to which the Corporation, in any capacity, is a party shall be deemed to arise under the laws of the United States.
(B) Removal.
Except as provided in subparagraph (D), the Corporation may, without bond or security, remove any action, suit, or proceeding from a State court to the appropriate United States district court before the end of the 90-day period beginning on the date the action, suit, or proceeding is filed against the Corporation or the Corporation is substituted as a party.[3]
The FDIC insisted, and the majority now holds that the broad statutory language “any action, suit, or proceeding from a State court” permits removal regardless of the case’s status within the state judicial system. Despite the breadth of the description of the categories of removable cases, however, the statute is silent on the critical question of the procedural posture of the litigation. I am convinced that the broad statutory language providing for removal of “any action, suit, or proceeding” describes and is limited to the types of removable matters; that general language does not address the trial/appellate status.
I am persuaded beyond peradventure that if Congress had intended to grant federal district courts the totally new power to review state court decisions, it would have articulated that authority with great specificity. An historical cornerstone of federal jurisdiction is that the general grant of jurisdiction to federal district courts does not include the power to review final state court judgments.[4] It is therefore only reasonable to expect that if Congress intended to vest the removal authority as embraced by the majority that authority would have been expressed with the same preciseness found in other specific jurisdictional grants. For example, Congress has promulgated express, succinct guidelines for judicial review of agency actions. See the Administrative Procedure Act, at 5 U.S.C. §§ 701-706. In empowering the courts of appeals with authority to review particular agency orders, Congress has not required, as in the FIRREA removal provision, that the case be presented initially to the district court but has, instead, expressly permitted filing directly in the courts of appeals.[5] Similarly, the distinct boundaries of federal review of state court criminal procedures have been detailed expressly by Congress. See 28 U.S.C. §§ 2241-2254. One need be mindful that even the power of the United States Supreme Court to review final state court judgments has been legislatively defined. See 28 U.S.C. § 1257.
*524 That section 1819’s broad statutory language is not sufficient to create the exceptional removal right granted by the majority should immediately be apparent when one considers the consequences of that holding. Under today’s holding we must either direct the district courts to sit as appellate courts over the removed state court cases, or require our trial courts to “rubber stamp” state court judgments and forward them to federal appellate courts for review. The first option requires the district court to exercise appellate jurisdiction, not original jurisdiction. See 28 U.S.C. § 1441(a). The language purportedly requiring this result is contained not only in section 1819, but also in the very statute that forges the original jurisdiction limitation. Compare 12 U.S.C. § 1819(b)(2)(B) (“any action, suit, or proceeding from a State court”) with 28 U.S.C. § 1441(a) (“any civil action brought in a State court”).
I see no conceivable support for the proposition that FIRREA effects a wholesale replacement of the usual federal schema, including the removal statutes, 28 U.S.C. §§ 1441-1451.[6] For example, by referring to the “appropriate United States District Court,” subsection 1819(b)(2)(B) obviously invokes the venue provisions of 28 U.S.C. § 1441(a). FIRREA contains no provisions for the mechanics of removal. Without resort to the general statutes the procedures for notice of removal to the district court, for opposition thereto, and for stay of the state court proceedings are nonexistent. At this point it is worthy of underscoring that when Congress took FDIC cases out of the ordinary rule forbidding appellate review of remand orders, it expressly detailed that exception in 12 U.S.C. § 1819(b)(2)(C). By contrast, FIR-REA contains no waiver of the original jurisdiction limitation of district court jurisdiction or of any of the other general federal rules or procedures.
The majority finds the second FDIC suggestion acceptable; I do not. A district court forced to adopt a state trial court decision as its own would not be exercising original jurisdiction over a case or controversy. I reject the suggestion that Congress would consider, even momentarily, imposing such a limiting function on an Article III court.[7] Further, assuming an adequate resolution of the district court’s role, the incongruities inherent in this proposal extend even further for we are forced to theorize on the subject of our own jurisdiction. The FDIC suggests two procedural tracks for today’s holding, one which requires a notice of appeal and one which *525 does not.[8] Both of these alternatives are in conflict with other well-established rules. One rubric provides that once a case has been removed to federal court its course is governed by federal law. Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, 415 U.S. 423, 441, 94 S.Ct. 1113, 1125, 39 L.Ed.2d 435, 451 (1974). The majority embraces Granny Goose Foods. Another rule obliges the federal court to accept the case “in its current posture ‘as though everything done in state court had in fact been done in the federal court.’ ” Nissho-Iwai American Corp. v. Kline, 845 F.2d 1300, 1303 (5th Cir.1988) (quoting Saveli v. Southern Ry., 93 F.2d 377, 379 (5th Cir.1937) and discussing Granny Goose Foods). If a case is already on appeal in state court and is subsequently removed to a federal district court, however, we must either ignore the federal notice of appeal requirements in order to accept the case in its state posture, or we must ignore the state posture by requiring a federal notice of appeal. With today’s holding, without any congressional leave the jurisdictional notice of appeal simply disappears. By a deft brush of legal legerdemain the majority automatically vests federal appellate jurisdiction over a state court case which has, somehow, passed through the precincts of a powerless district court judge. Appellate jurisdiction is just one example of the attendant clashes between state and federal procedures. If, “any action, suit, or proceeding” means any matter at any stage in the litigation process, then a case may be removed while a writ of certiorari is pending before the state’s highest court or, even more startlingly, after disposition by the state’s highest court and pending a petition for rehearing before that court, or even thereafter, pending a writ application to the United States Supreme Court. In each of those instances we must now fabricate the appropriate procedural rules out of whole cloth. Are we to decide whether the state court would consider the case important enough to grant discretionary review? Should we apply our own appellate rules and consider the appeal mandatory? Should we grant the rehearing? What standard are we to apply in reviewing the rehearing; should we seek to act as we fathom the state court would act or should we independently analyze the problem? Extending the majority’s analysis, perhaps we should mandate the adoption of the state appellate court’s decision as our own decision and then allow the case to proceed on a writ of certiorari from this court to the United States Supreme Court. Or even more alarming, suppose the supreme court of the state has granted a writ of certiorari to an intermediate state appellate court at the time of the FIRREA removal. Does that require the United States Supreme Court to hear the case on certiorari? Under the majority’s analysis of Granny Goose Foods that answer apparently must be “yes.” Other questions come to mind. I entertain no doubt whatever that the simple broad language of 12 U.S.C. § 1819(b)(2)(B) was not intended to impose those bizarre procedures upon the federal judiciary, either trial or appellate.
These dizzying circumstances would not plague our federal procedural scheme, however, if after removal the district court *526 were asked to grant Rule 60(b) relief. In that setting the long-established federal protocols would not be shredded. In prior decisions we have allowed the removal of a case subsequent to a state court default judgment where Rule 60(b) relief was still available. Federal Deposit Ins. Corp. v. Yancey Camp Development Co., 889 F.2d 647 (5th Cir.1989), is the only prior case allowing removal after the state appellate court has been vested with jurisdiction. In Yancey we held that the district court improperly refused to set aside a state default judgment. We did not discuss the removal question but noted that a “state court judgment in a ease properly removed to federal court — like the one before us— can be vacated under Federal Rule of Civil Procedure 60(b).” 889 F.2d at 648.
In Murray v. Ford Motor Co., 770 F.2d 461 (5th Cir.1985), removal was effected while a timely motion to set aside a default judgment was pending in the state trial court. The state court had not received the removal notice and had entered a default judgment after the removing party failed to appear in court. Pursuant to Rule 60(b)(1) we allowed the state judgment to be set aside. Similarly, in Beighley v. Federal Deposit Ins. Corp., 868 F.2d 776 (5th Cir.1989), motions to vacate the judgment and for a new trial were still pending in the state trial court when the suit was removed.
In Northshore Development, Inc. v. Lee, 835 F.2d 580 (5th Cir.1988), we interpreted 12 U.S.C. § 1730(k)(1) (repealed) to permit removal after entry of a state trial court damages award; the FSLIC was. seeking Rule 60(b) relief. We have also permitted a district court on removal to set aside a default judgment against a Jones Act defendant. Azzopardi v. Ocean Drilling & Exploration Co., 742 F.2d 890 (5th Cir.1984). The Ninth Circuit has permitted a district court on removal to set aside a default judgment against a diverse defendant on a state law claim. Butner v. Neustadter, 324 F.2d 783 (9th Cir.1963). In Munsey v. Testworth Laboratories, Inc., 227 F.2d 902 (6th Cir.1955), the Sixth Circuit did likewise. Removal in these cases did not require or result in a disruption of the established federal procedural practices.
I cannot accept the contention that congressional policy behind FIRREA justifies the remarkable removal power which today’s majority grants the FDIC. Indeed, the scant guidance provided by FIRREA’s legislative history supports my conclusion that the words “any” and “State court,” when interpreted in the context of FIRREA and the general procedural statutes, do not mean every matter at every procedural stage of litigation. When FIRREA’s removal provision was first submitted in a House of Representatives amendment it was described as vesting in the FDIC only the “authority to remove certain State court proceedings to Federal court.” H.R.Rep. No. 101-54(1), 101st Cong. 1st Sess., reprinted in 1989 U.S.Code Cong. & Admin.News 86, 124-25 (discussing H.R. 1278, 101st Cong., 1st Sess. (Version 2 of May 18, 1989)) (emphasis added). Certain proceedings, not all state court proceedings.
I would hold that 12 U.S.C. § 1819(b)(2) does not permit the FDIC to remove a state court appellate proceeding if, at the time of removal, relief is not available under Rule 60 of the Federal Rules of Civil Procedure, and therefore respectfully DISSENT.

. FIRREA's jurisdictional provisions apply to cases pending on the date of its enactment. See Triland Holdings & Co. v. Sunbelt Service Corp., 884 F.2d 205 (5th Cir.1989); see also Kirkbride v. Continental Casualty Co., 933 F.2d 729 (9th Cir.1991); Federal Deposit Ins. Corp. v. 232, Inc., 920 F.2d 815 (11th Cir.1991); Demars v. First Service Bank for Savings, 907 F.2d 1237 (1st Cir.1990); In re Resolution Trust Corp., 888 F.2d 57 (8th Cir.1989).

. Although remand orders generally are not ap-pealable, 12 U.S.C. § 1819(b)(2)(C) authorizes appeal by the FDIC.

. Subparagraph (D) is inapplicable to the present inquiry.

. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

. 28 U.S.C. § 2342 (granting courts of appeals exclusive jurisdiction to review final orders of the Federal Communications Commission, the Secretary of Agriculture, the Secretary of Transportation, the Federal Maritime Commission, and the Interstate Commerce Commission): 8 U.S.C. § 1105a (Immigration and Naturalization Service order reviewed pursuant to 28 U.S.C. § 2341 et seq.); 29 U.S.C. § 160(f) (National Labor Relations Board orders reviewed by courts of appeals); and, 18 U.S.C. § 843(e)(2) (Secretary of Treasury licensing decisions reviewed by courts of appeals). See also 16 U.S.C. § 8251 (delineating the power of the United States Court of Appeals for the District of Columbia to review final orders of the Federal Power Commission) and 28 U.S.C. § 2645 (Court of International Trade decisions reviewed by the Federal Circuit).

. See, e.g. Lazuka v. Federal Deposit Ins. Corp., 931 F.2d 1530, 1536 (11th Cir.1991) (Congress intended "that the FDIC adhere in most respects to general removal procedure"); Federal Deposit Ins. Corp. v. Norwood, 726 F.Supp. 1073, 1075 (S.D.Tex.1989).

. Congress' power to confer jurisdiction on federal courts under Article III of the United States Constitution is limited to "cases” and "controversies.” In National Mutual Insurance Co. v. Tidewater Transfer Co., 337 U.S. 582, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949), however, three Supreme Court Justices took the view, rejected by the other Justices, that Article I of the Constitution empowers Congress to confer on "constitutional” federal courts powers beyond those defined in Article III. This theory has never been sanctioned by a majority of the Court and it is not viable today. See L. Tribe, American Constitutional Law, 68, 187-88 (1988) (footnote omitted); C. Wright, The Law of Federal Courts 110 (1983).
Reserving comment on its validity, we also distinguish the theory popularly known as "protective jurisdiction.” This theory has been posited to justify congressional grants of federal subject matter jurisdiction without concomitant substantive legislation, but not to justify grants of jurisdiction without the power to judge the case. See Bickel & Wellington, Legislative Purpose and the ludicial Process: The Lincoln Mills Case, 71 Harv.L.Rev. 1, 21 (1957); C. Wright, supra, at 110-11.
In addition, "[i]n order for a claim to be justiciable as an article III matter, it must ‘present a real and substantial controversy which unequivocally calls for adjudication of the rights’ asserted.” L. Tribe, supra, at 68 (quoting Poe v. Ullman, 367 U.S. 497, 509, 81 S.Ct. 1752, 1759, 6 L.Ed.2d 989 (1961) (Brennan, J., concurring in the judgment)). The "justicia-bility" maxim is anchored in concepts of "mootness,” "ripeness," and "standing,” and does not precisely address the “rubber stamp” theory before this court. See e.g., Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Nonetheless, just as it requires an adversarial context, the case-or-controversy requisite of Article III would seem to require, at a minimum, the power to judge something.

. One proposed procedural track that this court could adopt to effectuate the FDIC’s interpretation would not require a federal notice of appeal. The FDIC suggests:
Under this approach, an appeal perfected in state court results in the perfection of an appeal in the federal circuit court. Because a notice of appeal has already been filed in state court and is, upon removal, on file in the federal district court, no new notice would need to be filed in the federal court. The state court notice of appeal would be given the same effect as if it were a notice of appeal filed in federal court. The federal district court need only transmit the record to the federal court of appeals so that the case can proceed from the point where it left off in state appellate court.
The FDIC also proffers an alternative proposal, the procedure followed by the Eleventh Circuit in Jackson v. American Sav. Mortg. Corp., 924 F.2d 195 (11th Cir.1991). Under the Jackson procedure, the FDIC must file a Rule 59 motion. If the district court refuses to modify or vacate, then the state court judgment or order becomes the district court’s judgment or order. A notice of appeal would follow the district court’s disposition of the Rule 59 motion.